

George F. Vogt, Kodiak, for appellant.

W.H. Hawley, Asst. Atty. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

**Timothy CORBIN, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 7010.**

Court of Appeals of Alaska.

Nov. 25, 1983.

## OPINION

COATS, Judge.

The state charged Timothy Corbin with theft in the second degree, a class C felony. AS 11.46.100; AS 11.46.130(a)(1).[1] The in-

---

1. AS 11.46.100 reads as follows:

   *Theft defined:* A person commits theft if (1) with the intent to deprive another of property or to appropriate property of anoth-
   er through himself or a third person, he obtains the property of another.

   AS 11.46.130 reads as follows:

dictment charged that Corbin stole crab pots valued at over $500 which belonged to Richard Powell, owner of the F/V Icelander. A jury convicted Corbin of this offense. Judge Roy Madsen sentenced Corbin to two years' imprisonment with twenty-one months suspended and placed him on probation until July 6, 1984. As conditions of probation, Judge Madsen ordered Corbin to refrain from commercial fishing for one year and to make restitution.

The state and Corbin stipulated that "the area wherein the alleged criminal offense occurred was in the Pacific Ocean located no less than sixteen miles from the nearest point of land." Corbin argued in the trial court and now argues on appeal that the state does not have jurisdiction to prosecute him for a theft offense which took place outside the three-mile limit. Judge Roy Madsen denied Corbin's motion to dismiss for lack of jurisdiction. We affirm.

Corbin does not contest the fact that state statutes which establish the state's jurisdiction for criminal offenses authorize a prosecution for an offense committed outside the three-mile limit.[2] Rather, Corbin argues that the federal government has exclusive jurisdiction in criminal matters outside the three-mile limit and also that a federal criminal theft statute shows an intent to pre-empt any state regulation of criminal conduct.[3]

In *State v. Bundrant,* 546 P.2d 530, 537–38 (Alaska 1976), *appeal dismissed sub nom. Uri v. Alaska,* 429 U.S. 806, 97 S.Ct. 40, 50 L.Ed.2d 66 (1976), the court discussed the constitutional doctrines of federal exclusivity and federal pre-emption. The court stated that under the doctrine of federal exclusivity:

> [C]ertain provisions of the federal constitution which delegate powers to the central government implicitly restrict the police powers of the states and thereby carve out areas which can be regulated, if at all, only by the federal government. The concept is one of exclusive federal domains.
>
> The doctrine of federal pre-emption also deals with the allocation of state and federal responsibilities, but it speaks to those situations where there is recognized *concurrent* state and federal authority. It holds that when Congress has exercised its regulatory authority over a particular subject in manner to indicate an intention to deal fully and exclusively therewith, all state regulation in the particular field must yield. The basic premise is the supremacy of federal law.

In *Bundrant* the court concluded that the state could regulate the crabbing industry and had jurisdiction over offenses involving the violation of crab fishing regulations which occurred outside the three-mile limit. *Id.,* at 552–54. The court specifically rejected the argument that the state had no jurisdiction to prosecute these offenses because of the doctrines of federal exclusivity and federal pre-emption. *Id.* at 544. These holdings of *Bundrant* were reaffirmed in

---

**2.** AS 44.03.010 reads as follows:
> *Offshore waters and lands.* The jurisdiction of the state extends to waters offshore from the coast of the state as follows:
> (1) The marginal sea to its outermost limits as those limits are from time to time defined or recognized by the United States of America by international treaty or otherwise.
> (2) The high seas to the extent that jurisdiction is claimed by the United States of America, or to the extent recognized by the usages and customs of customs of international law or by agreement to which the United States of America or the state is a party.
> (3) Submerged lands including the subsurface of submerged lands lying under the waters mentioned in this section.

**3.** 18 U.S.C.A. § 661 (West, 1976) reads in part as follows:
> Whoever, within the special maritime and territorial jurisdiction of the United States, takes and carries away, with intent to steal or purloin, any personal property of another shall be punished as follows:
> If the property taken is of a value exceeding $100, or is taken from the person of another, by a fine of not more than $5,000, or imprisonment for not more than 5 years, or both. . . .

*Theft in the second degree.* (a) A person commits a crime of theft in the second degree if he commits theft as defined in § 100 of this chapter and if (1) the value of the property or services is $500 or over, but less than $25,-000.

*F/V American Eagle v. State,* 620 P.2d 657, 661–62 (Alaska 1980), *Appeal dismissed,* 454 U.S. 1130, 102 S.Ct. 985, 71 L.Ed.2d 284 (1982). We believe that *Bundrant* essentially disposes of Corbin's claim.

We recognize, of course, that Corbin's case involves extending the *Bundrant* holding to a general criminal statute which was not passed specifically to regulate the crabbing industry. However, we conclude that the enforcement of this theft statute was so closely tied to the regulation of the crabbing industry that state jurisdiction in this case is justified. The instant case does not require us to define with precision to what extent the state can enforce its general criminal statutes beyond state territorial waters. However, as a general principle, we find the reasoning of *People v. Corsino,* 91 Misc.2d 46, 397 N.Y.S.2d 342 (N.Y.Crim. Ct.1977) to be persuasive. In that case, the defendant committed an assault in an airplane which landed at Kennedy airport in New York City. The defendant argued that the state of New York did not have jurisdiction to try him for the assault because he did not commit the offense in New York State or in the air space over New York. The court held that New York had jurisdiction. The court reasoned that:

> Though none of this alleged conduct occurred in New York State, the conduct has a particular effect in the state. The complainant was entering the state through an air terminal situated therein. Misdemeanor assaults that occur on planes enroute to New York could have a materially harmful impact upon the welfare of New York's community. The threat of physical harm to visitors and to residents of the state who use the airports as a means of ingress to the state would have a far-reaching effect on the use of airports situated in New York. Though the federal government has jurisdiction over crimes committed on inter-

state and international flights, this jurisdiction is not regularly exercised in cases like the present one. The practical effect of failing to exercise New York's power over crimes having a particular effect on the jurisdiction would be to open the way to uncontested and dangerous conduct in the air routes to this state.[4]

*Id.* 397 N.Y.S.2d at 344.

In *F/V American Eagle* the court clearly reaffirmed the importance to the state of regulating the crab fishing industry outside the territorial waters of the state. In reaffirming *Bundrant,* the court stated:

> In *Bundrant* we upheld the state's exercise of regulatory jurisdiction over crab fisheries beyond the three-mile limit against arguments based on federal exclusivity, preemption, and other doctrines. This power to regulate beyond the territorial boundary, where the crab spend much of their life cycle, was shown in that case to be clearly necessary if the economically and ecologically important migratory crab population within the state's territorial boundary is to be perpetuated.

*F/V American Eagle,* 620 P.2d at 662–63.

The theft of crab pots appears to be closely related to the regulation of the crab fishing industry. Furthermore, as in *Corsino,* it appears that the federal government is not exercising its jurisdiction to prosecute thefts such as the one in the instant case. First, state authorities, through their regulation of the crab fishing industry, are probably in the best position to enforce criminal statutes which have an impact on the crab fishery. We assume it is quite possible that if the state could not prosecute these offenses, they would not be prosecuted. As in *Corsino,* the state's interest in prosecution is clear. There is no evidence of any conflict with federal policy.[5] We conclude that the

---

**4.** The supreme court found similar reasoning persuasive in *Bundrant,* 546 P.2d at 555–56.

**5.** In *F/V American Eagle,* 620 P.2d at 662 n. 10, the court noted that the passage of the Fishery Conservation and Management Act of 1976, 16 U.S.C. § 1801–82 (1974), could present a prob-

lem of federal pre-emption. The court stated that:

> To the extent that there may be a conflict between state fisheries regulations and federal regulations promulgated under the Act, Alaska's authority to regulate fisheries under *Bundrant* has been superseded. *See* 16 U.S.

state has jurisdiction to prosecute Corbin for theft.

The conviction is AFFIRMED.

C.A. § 1856 (West, 1979 Supp.) (delineating federal and state jurisdiction in this area).

However, since the events of *American Eagle* arose prior to March 1, 1977, the effective date of the Act, the court relied upon *Bundrant* to decide that Alaska had jurisdiction to regulate crab fishing beyond its traditional three-mile limit.

The Act, in relevant part, provides:

No state may directly or indirectly regulate any fishing which is engaged in by any fishing vessel outside its boundaries, unless such vessel is registered under the laws of such state.

16 U.S.C.A. § 1856(a) (West, 1983 Supp.).

Corbin and the state have stipulated that Corbin is an Alaskan resident and his vessel is registered in Alaska.

Corbin has not argued that the federal government has in any way pre-empted state regulation of the crab fishing industry by pass-ing the Fishery Conservation and Management Act. Rather, he argues that the fact that there is a general federal criminal statute which applies to thefts establishes pre-emption. We have rejected that contention by holding that there is no conflict between allowing both federal and state concurrent jurisdiction over theft of crab pots outside Alaskan territorial waters.

The Fishery Conservation and Management Act on its face does not appear to require federal pre-emption since it specifically allows the state to regulate vessels "registered under the laws of such state." Corbin has not argued that federal regulations pre-empt state regulation of the crab fishing industry. Nor has he argued that because the state can only regulate vessels registered under the laws of the state, realistic regulation of the crab fishing industry is no longer feasible or possible. *See Bundrant,* 546 P.2d at 554–55. We do not express any opinion on these issues.