**UNITED STATES of America**

**v.**

**Ioan PIZDRINT, Jr.**

**No. 96–422–CR–T–17A.**

United States District Court, M.D. Florida, Tampa Division.

Nov. 10, 1997.

Latour Rey Lafferty, U.S. Attorney's Office, Tampa, FL, for U.S.

James A. Wardell, Lazzara & Paul, P.A., Tampa, FL, Morris Weinberg, Jr., Zuckerman, Spaeder, Taylor & Evans, Tampa, FL, for Ioan Pizdrint, Jr.

### ORDER

KOVACHEVICH, Chief Judge.

This cause comes before the Court on Defendant, Ioan Pizdrint's, Motion to Dismiss Based on lack of Jurisdiction (Docket No. 25) and the Government's response thereto (Docket No. 29). The sole issue in this motion is the Court's subject matter jurisdiction over the offense charged.

On October 11, 1996, Defendant, his wife, Dolores Pizdrint, Daniel Paulesc and his wife, Melissa Paulesc, were passengers on the cruise ship "Celebration". The ship departed from New Orleans, Louisiana, at 2200 hours on October 11, 1996, and arrived in Tampa, Florida, on October 13, 1996. At 2250 hours on October 12, 1996, a security guard for the ship reported that he apprehended Defendant after Defendant beat his wife and Daniel Paulesc with a binocular. The beatings caused serious injuries to both victims. At the time of the beatings, the Celebration was located approximately one

hundred (100) miles west of Tampa, Florida. Defendant was held in the ship's brig until arrival in Tampa. The Federal Bureau of Investigation (FBI) was contacted by the Celebration and Defendant was arrested in Tampa and charged with violating 18 U.S.C. § 113(a)(3). Subsequently, Defendant pled guilty to the charge and this Court accepted his plea and adjudicated him guilty. Sentencing is scheduled for November 18, 1997.

### JURISDICTION

The Government contends that this Court has subject matter jurisdiction pursuant to 18 U.S.C. § 7. This case presents an interesting assortment of facts. The Defendant and his wife are Romanian citizens and permanent resident aliens of the United States. Daniel Paulesc is a naturalized United States citizen. The Celebration is owned by Carnival Cruise Lines, a division of Carnival Corporation. The Celebration flies a Liberian flag; however, Carnival Corporation is a corporation duly organized under the laws of the Republic of Panama. Carnival Corporation is registered and authorized to do business in the State of Florida and its corporate headquarters are located in Miami, Florida. In addition, Carnival Corporation is a publicly held corporation and its stock is traded on the New York Stock Exchange. Carnival Corporation has United States citizen shareholders, but does not maintain information regarding the specific number or percentage of U.S. shareholders.

Once the existence of subject matter jurisdiction is challenged, the burden of establishing it always rests on the party asserting jurisdiction. *United States v. Paredes,* 950 F.Supp. 584 (S.D.N.Y.1996). Accordingly, the burden is on the Government to establish jurisdiction. The Government relies on 18 U.S.C. § 7(1) and (8) to provide "special maritime and territorial jurisdiction." [1] Section 7(1) defines territorial jurisdiction of the United States to include:

> The high seas, any other waters within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State, and any vessel be-

---

1. The Government cites 18 U.S.C. § 7(7); however, it quotes the language from § 7(8). There-fore, the Court has substituted subsection (8) for (7).

longing in whole or in part to the United States or any citizen thereof, or to any corporation created by or under the laws of the United States, or of any State, Territory, District, or possession thereof, when such vessel is within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State.

18 U.S.C. § 7(1).

Defendant argues that the Government "has never alleged how many U.S. shareholders held stock in Carnival Cruise Lines on the date of the incident." Defendant contends that even if the Government were able to provide an exact number of U.S. shareholders, the distribution of stockholders throughout the world is not a determinative factor regarding jurisdiction. Defendant cites *Pavlou v. Ocean Traders Marine Corp.*, 211 F.Supp. 320, 325 (S.D.N.Y.1962) for this assertion. The court in *Ocean Traders* did not apply 18 U.S.C. § 7 to determine jurisdiction, instead, it analyzed the base operations of the persons directing the operations of the vessel as a factor in finding the Jones Act applicable.[2] Nevertheless, the court opined that the distribution of stockholders is not a determinative factor "when it is clear that the owning corporation has transferred the active operation of its business to another corporation which operates from the United States." 211 F.Supp. at 325. This was the court's response to Defendant's argument that since 50 percent of the corporation is foreign owned, it should not be treated as an American corporation. The Jones Act is not applicable to the case at hand.

The Government relies on *United States v. Keller*, 451 F.Supp. 631 (D.Puerto Rico 1978). In *Keller*, the Defendants argued that 18 U.S.C. § 7(1) was inapplicable because their vessel was owned by a Grand Cayman corporation. *Id.* at 635. The court emphasized the phrase "any vessel belonging in whole or in part to . . . any citizen . . . of the United States." The court determined that since the subject ship was owned totally or partially by any citizen of the United States, the vessel was subject to the operation of 18 U.S.C. § 7(1). Id. at 636–37. The plain

language of the statute governs the case at hand too. The Celebration is at least partially owned by a citizen or corporation of the United States.

■ Moreover, the Government makes other persuasive arguments under 18 U.S.C. § 7(8). That subsection provides that the term special maritime and territorial jurisdiction of the United States includes "[t]o the extent permitted by international law, any foreign vessel during a voyage having a scheduled departure from or arrival in the United States with respect to an offense committed by or against a national of the United States." Defendant concedes that Daniel Paulesc is a national of the United States, however, disputes that jurisdiction is "permitted by international law." Generally, under international law, vessels are under the exclusive jurisdiction of the countries whose flag they fly. *See United States v. Marino–Garcia*, 679 F.2d 1373, 1380 (11th Cir.1982). Nevertheless, there are five (5) exceptions to the exclusive jurisdiction rule. *See Id; United States v. Vasquez–Velasco*, 15 F.3d 833, 840 (9th Cir.1994). Although all of Government's arguments have merit, the Court will only address the issue of the objective territorial exception.

■ Under the objective territorial exception, the United states may exercise extraterritorial jurisdiction over a criminal offense which occurs onboard a foreign vessel when there is a nexus between the foreign vessel and the United States. *See United States v. Marino–Garcia*, 679 F.2d 1373, 1380 (11th Cir.1982). This territorial nexus is established when the conduct has a substantial effect within the United States territory and the exercise of jurisdiction is not unreasonable. *National Transportation Safety Board v. Carnival Cruise Lines Inc.*, 723 F.Supp. 1488, 1490 (S.D.Fla.1989). Defendant contends that a simple tort like assault does not have an effect within the United States that would warrant the exercise of jurisdiction. Defendant points out that, typically, the objective territorial exception is used for drug smuggling and kidnaping cases.

---

**2.** The "Jones Act", 46 U.S.C. § 688 provides an action for damages to any seaman who suffers

personal injury during employment.

The Court agrees with the Government that an assault and battery can have an effect on the United States and exercising jurisdiction would not be unreasonable. The Celebration is a commercial cruise liner that engages in substantial business within the United States and regularly operates in United States territory. *See Id.* at 1491 (Carnival cruise lines has a substantial, direct, and foreseeable effect in the United States). The cruise in question originated in the United States and terminated in the United States. Defendant is a permanent resident alien of the United States and so is his wife. Daniel Paulesc is a naturalized United States citizen. No doubt a majority of the passengers onboard were United States citizens. Defendant severely beat his victims and had to be detained on the ship. When the ship arrived in the United States, the F.B.I. was required to become involved. It seems illogical that Defendant argues that he permanently lives in the United States, took a cruise which was targeted to travelers within the United States, beat the consciousness out of his wife and severely injured another passenger, caused the F.B.I. to intervene upon arriving back into the United States, but argues that this activity has no effect on the United States, where Defendant seeks to continue to reside. Defendants' wife also reported that she had been beaten before and was afraid that Defendant would kill her with his gun that he kept back at their residence in Dallas, Texas.

The Court finds that the exercise of jurisdiction in this case is reasonable because of the effect Defendant's actions had on the United States. This argument regarding the link between the activity and the territory of the regulating state overlaps with the Government's argument regarding the nationality exception. The Court is not inclined to reiterate all of the Government's arguments and incorporates by reference its memorandum of law herein. Accordingly, it is

**ORDERED** that Defendant's motion to dismiss for lack of jurisdiction be **DENIED**.