707 So.2d 877 (1998)
Matthew STEPANSKY, Petitioner,
v.
STATE of Florida, Respondent.
No. 97-1761.
District Court of Appeal of Florida, Fifth District.
March 4, 1998.
Rehearing Denied March 27, 1998.
Robin C. Lemonidis and Bob R. Cherry of O'Brien, Riemenschneider, Kancilia & Lemonidis, P.A., Melbourne, for Petitioner.
Robert A. Butterworth, Attorney General, Tallahassee and Richard L. Polin, Assistant Attorney General, Miami, for Respondent.
COBB, Judge.
The issue in this case concerns the authority of the State of Florida to exercise criminal jurisdiction over an act occurring on the high seas on a foreign flag vessel.
The general criminal jurisdiction of the State of Florida is set out in section 910.005, Florida Statutes. In general, it provides that the State of Florida has jurisdiction over criminal acts committed wholly or partly within its geographical boundaries. The state has jurisdiction over criminal acts committed on the seas within three miles of the state's shoreline.[1] The state may also exercise criminal jurisdiction over acts committed *878 beyond this three mile limit, at least where such acts have an effect in this state and there is no conflict with federal law and no foreign nation has criminal jurisdiction over said acts. See, e.g., People v. Weeren, 26 Cal.3d 654, 163 Cal.Rptr. 255, 607 P.2d 1279 (1980); People v. Corsino, 91 Misc.2d 46, 397 N.Y.S.2d 342 (N.Y.CityCrim.Ct.1977); Corbin v. State, 672 P.2d 156 (Ct.App.Alaska 1983).
In 1989, the legislature enacted section 910.006 entitled "State special maritime criminal jurisdiction" which in relevant part purports to extend to the State of Florida special maritime criminal jurisdiction:
(3) to acts or omissions on board a ship outside of the state under any of the following circumstances:
* * * * * *
(d) The act or omission occurs during a voyage on which over half of the revenue passengers on board the ship originally embarked and plan to finally disembark in this state, without regard to intermediate stopovers.
Stepansky is being prosecuted in Brevard County Circuit Court pursuant to subsection 910.006(3)(d) for burglary and attempted sexual battery allegedly occurring while he was a passenger on the M/V Atlantic, a Liberian registered cruise ship, 100 miles off the coast of Florida, in international waters. Stepansky and the complaining witness are United States citizens but neither is a resident of the State of Florida. The ship embarked and disembarked from Port Canaveral in Brevard County.
Stepansky moved to dismiss on the basis that the state lacks jurisdiction. The motion was denied, and he now seeks a writ of prohibition from this court asserting that the State of Florida has no constitutional authority to exercise jurisdiction over him for acts allegedly committed 100 miles off the coast of the State of Florida while aboard a foreign flag vessel.
Stepansky argues the "Flag State Rule," that the country whose flag a ship flies has exclusive jurisdiction over the ship and all aboard. He quotes from the Geneva Convention on the High Seas of 1958: Ships shall sail under the flag of one State only and, save in exceptional cases expressly provided for in international treaties or these articles, shall be subject to its exclusive jurisdiction on the high seas.[2] Stepansky asserts that, as a matter of international law, Liberia, as the Flag State of the Atlantic, has jurisdiction of this matter and Florida has no legal basis to claim jurisdiction. He argues that if a United States court has any authority to act at all in this case (instead of Liberia), the federal government must hold exclusive jurisdiction pursuant to federal maritime criminal statutes.
In 1994, due to continuing concern in regard to unpunished acts of maritime terrorism, the United States Congress enacted 18 U.S.C.A. § 7(8), which purported to extend the country's maritime jurisdiction to crimes committed by or against a national of the United States while aboard a foreign vessel on the high seas if that vessel, pursuant to schedule, departed from, or arrived in, the United States. The definition of the special maritime and territorial jurisdiction of the United States is now embodied in 18 U.S.C.A. § 7 as follows:
7. Special maritime and territorial jurisdiction of the United States defined
The term "special maritime and territorial jurisdiction of the United States", as used in this title, includes:
(1) The high seas, any other waters within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State, and any vessel belonging in whole or in part to the United States or any citizen thereof, or to any corporation created by or under the laws of the United States, or of any State, Territory, District, or possession thereof, when such vessel is within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State.
* * * * * *
(7) Any place outside the jurisdiction of any nation with respect to an offense by *879 or against a national of the United States.
(8) To the extent permitted by international law, any foreign vessel during a voyage having a scheduled departure from or arrival in the United States with respect to an offense committed by or against a national of the United States.
Stepansky does not challenge the authority of the United States to thus expand its jurisdiction of maritime criminal acts on the high seas, but he argues that none of the federal statutes and amendments purport to give the State of Florida any authority in this area. The state's authority over criminal acts committed at sea, says Stepansky, is still confined to three miles from its coast. See Mounier v. State, 178 So.2d 714 (Fla.1965)(overturning convictions for spear fishing occurring beyond three mile limit).
The state responds that there is no express language in federal legislation, before or after the 1994 enactment, that expressly preempts the field of maritime legislation so as to preclude state legislation. This assertion misses the point. The true question is: what is the authority of the State of Florida to enact a statute purporting to exercise criminal jurisdiction over an act occurring on the high seas on a foreign flag vessel?
As we read the 1994 federal legislation, it pertains only to federal criminal jurisdiction, not to state criminal jurisdiction.[3] Whatever may be the validity vel non of the federal legislation in light of present day international law, an issue not before us, we do not see that legislation as authorizing the extension of the territorial boundaries of Florida. It seems clear that section 910.006(3)(d), as applied in this case, is violative of international law and the treaty obligations of the United States. Although there is authority for the United States to assert extraterritorial jurisdiction over its nationals, there simply is no basis for such an extension by a political subdivision of the United States in regard to the territory of a foreign countryand the flagship of another country is just that. The State of Florida is constitutionally prohibited from entering into a treaty with Liberia in respect to jurisdiction of crimes on the high seas. See Article I, section 10 of the United States Constitution.[4]
Accordingly, we find that section 910.006(3)(d), Florida Statutes, was enacted by the Florida Legislature without the constitutional authority to do so, thereby intruding upon the exclusive province of Congress and the President as delineated by Article I, section 10 of the United States Constitution. Cf. Zschernig v. Miller, 389 U.S. 429, 88 S.Ct. 664, 19 L.Ed.2d 683 (1968). There is no showing, and no argument presented to us, that any treaty ceding such power to Florida has been executed between Liberia and the United States.
THE WRIT OF PROHIBITION IS ISSUED.
ANTOON, J., concurs.
HARRIS, J., concurs and concurs specially, with opinion.
HARRIS, Judge, concurring and concurring specially.
It is a general principle of international law that vessels on the high seas, with very few exceptions, are subject to no authority except that of the State whose flag they fly. In 1994, the United States Congress, in an effort to extend American jurisdiction, amended 18 U.S.C. § 7 by asserting limited criminal jurisdiction for crimes committed aboard foreign vessels on the high seas:
(8) To the extent permitted by international law, any foreign vessel during a voyage having a scheduled departure or arrival in the United States with respect to an offense *880 committed by or against a national of the United States.
It has not yet been determined, and the issue is certainly not here before us, whether under international law, the United States can properly subject citizens of another nation to the jurisdiction of our courts for crimes committed by them against our nationals on a foreign vessel on the high seas even if such foreign vessel has availed itself of our ports. It seems clear, however, that international law does not prohibit a State from trying its own nationals for crimes committed abroad regardless of the nationality of the victim, at least if such crimes have an effect in such national's State. Therefore, it is submitted that the United States has the authority to prosecute its own citizens who commit a crime on board a foreign vessel on the high seas if it chooses to do so. Thus, the United States could try Stepansky under federal law.
The issue before us is whether Florida can do so. I agree with Judge Cobb that it cannot. Florida asserts jurisdiction under section 910.006(3), Florida Statutes:
(3) SPECIAL MARITIME CRIMINAL JURISDICTION.The special maritime criminal jurisdiction of the state extends to acts or omissions on board a ship outside of the state under any of the following circumstances:
* * * * * *
(d) The act or omission occurs during a voyage on which over half of the revenue passengers on board the ship originally embarked and finally plan to disembark in this state, without regard to intermediate stopovers.
This statute, as written, would permit Florida to prosecute a national of the State whose flag is being flown, Liberia in this case (perhaps a crew member), for committing a crime on the high seas against another national of such State (perhaps another crew member), even if neither of such nationals ever set foot on Florida soil so long as the ship on which they were employed or sailing stopped at a Florida port and picked up over half of its revenue passengers and intended to return them here. Even the United States does not claim such broad criminal jurisdiction over non-citizens sailing on the high seas on ships flying the flag of another nation even if American ports have been visited. In my view, by attempting to assert jurisdiction over all persons aboard a foreign vessel for acts committed on the high seas, the Florida statute violates a treaty[1] entered into by the United States which recognizes that exclusive jurisdiction over a ship on the high seas lies in the nation whose flag is carried by such ship. Although there are exceptions to this exclusive jurisdiction recognized by the treaty (for examplepiracy, slave trade and hot pursuit), even if Florida, a non-signatory of the treaty, could avail itself of treaty exceptions, the use of an American port and the percentage of persons who embark or disembark at such port are not among those exceptions.
The State invites us to amend section 910.006(3)(d) by restricting its application to only non-Florida, United States' nationals (Florida residents and citizens are covered by section 910.006(3)(a) and that section is not involved herein). Even if we did so, still the state would face the hurdle discussed in the majority opinion.
NOTES
[1] The seaward boundary of the State of Florida is defined as three miles from its coast. See Art. II, § 1(a), Fla. Const. (1968).
[2] See Convention on the High Seas, Art. 6, § 1, 29 April 1958, 13 U.S.T. 2312, T.I.A.S. No. 520.
[3] Based on extant federal case law, Stepansky apparently can be prosecuted in the appropriate United States District Court. See United States v. Pizdrint, 983 F.Supp. 1110 (M.D.Fla. 1997).
[4] Article I, section 10 provides in pertinent part:

SECTION 10. No State shall enter into any Treaty, Alliance, or Confederation; grant Letters of Marque and Reprisal; coin Money; emit Bills of Credit; make any Thing but gold and silver Coin a Tender in Payment of Debts; pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility.
[1] Geneva Convention on the High Seas, April 29, 1958, Art. 6, § 1, 13 U.S.T. 2312.