761 So.2d 1027 (2000)
STATE of Florida, Appellant,
v.
Matthew STEPANSKY, Appellee.
No. SC93106.
Supreme Court of Florida.
April 20, 2000.
Rehearing Denied June 12, 2000.
*1029 Robert A. Butterworth, Attorney General, and Richard L. Polin, Assistant Attorney General, Miami, Florida, for Appellant.
Robin C. Lemonidis and Bob R. Cherry of O'Brien, Riemenschneider, Kancilia & Lemonidis, P.A., Melbourne, Florida, for Appellee.
PARIENTE, J.
We have on appeal Stepansky v. State, 707 So.2d 877 (Fla. 5th DCA 1998), a decision of the Fifth District Court of Appeal declaring section 910.006(3)(d),[1] Florida Statutes (1995), to be unconstitutional as an intrusion "upon the exclusive province of [the United States] Congress and the President as delineated by Article I, section 10 of the United States Constitution." Stepansky, 707 So.2d at 879. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons expressed in this opinion, we reverse the decision of the Fifth District and find that section 910.006(3)(d), which is part of Florida's "special maritime criminal jurisdiction" statute, is constitutional as applied in this case.

FACTS
Matthew Stepansky, a United States citizen, was charged in Brevard County, Florida with burglary and attempted sexual battery of a thirteen-year-old American citizen that allegedly occurred on board a cruise ship, the M/V Atlantic. The cruise ship departed from and returned to Port Canaveral, which is located in Brevard County. At the time of the alleged crime, the cruise ship was approximately 100 nautical miles[2] from the Atlantic coastline of Florida. Stepansky and the complainant are both United States citizens but neither one is a Florida resident. The M/V Atlantic is registered in Liberia but owned by Premier Cruise Lines, Ltd. of the British West Indies. Neither the federal government,[3] *1030 any other state, nor the flag state[4] has attempted to prosecute this crime.
Stepansky moved to dismiss the charge on the grounds that the State lacked jurisdiction because the crime occurred outside the territorial jurisdiction of Florida and because the prosecution was precluded by the Supremacy Clause of the United States Constitution. In response, the State argued that Florida state courts have jurisdiction over this crime under section 910.006(3)(d) because the majority of the paying passengers on the cruise ship had embarked and intended to disembark in Florida. The trial court denied the motion, and Stepansky sought a writ of prohibition from the Fifth District. The Fifth District issued the writ, holding that the Florida Legislature was without constitutional authority to enact section 910.006(3)(d) because the statute intruded upon the exclusive province of Congress and the President under the United States Constitution, specifically Article I, Section 10. See Stepansky, 707 So.2d at 879.

ANALYSIS
Section 910.006(3)(d) of the special maritime criminal jurisdiction statute that is the subject of the constitutional attack in this case extends the ability of this State to prosecute crimes to criminal acts committed on cruise ships sailing outside the State's territorial waters[5] if the "act or omission occurs during a voyage on which over half of the revenue passengers on board the ship originally embarked and plan to finally disembark" in Florida. § 910.006(3)(d).[6] In determining whether section 910.006(3)(d) is constitutional, we must "resolve all doubts as to the validity of [the] statute in favor of its constitutionality, provided the statute may be given a fair construction consistent with the federal and state constitutions as well as with the legislative intent." State v. Stalder, 630 So.2d 1072, 1076 (Fla.1994) (quoting State v. Elder, 382 So.2d 687, 690 (Fla. 1980)) (alteration in original).

A. Principles of Federalism
The Tenth Amendment to the United States Constitution specifically provides that all "powers not delegated to the United States by the Constitution" are reserved to the states. Indeed, "[i]t is fundamental in our federal structure that states have vast residual powers. Those powers, unless constrained or displaced by the existence of federal authority or by proper federal enactments, are often exercised in concurrence with those of the national government." United States v. Locke, ___ U.S. ___, ___, 120 S.Ct. 1135, 1148, 146 L.Ed.2d 69 (2000) (citing M'Culloch v. Maryland, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819)).
The United States Supreme Court has observed that "the States under our federal system have the principal responsibility for defining and prosecuting crimes." Abbate v. United States, 359 U.S. 187, 195, 79 S.Ct. 666, 671, 3 L.Ed.2d 729 (1959); see United States v. Lopez, 514 U.S. 549, 561 n. 3, 115 S.Ct. 1624, 1631, 131 L.Ed.2d 626 (1995). Nonetheless, if federal law has *1031 preempted state law, either expressly or impliedly, the Supremacy Clause[7] requires state law to yield. See, e.g., Barnett Bank of Marion County, N.A. v. Nelson, 517 U.S. 25, 30, 116 S.Ct. 1103, 1107, 134 L.Ed.2d 237 (1996); Ray v. Atlantic Richfield Co., 435 U.S. 151, 157, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978).
Thus, in Skiriotes v. Florida, 313 U.S. 69, 61 S.Ct. 924, 85 L.Ed. 1193 (1941), the United States Supreme Court concluded that Florida could prosecute one of its citizens for violating state laws regulating the taking of commercial sponges, even if the crime occurred outside of Florida's territorial waters. Id. In determining that the State's exercise of extraterritorial jurisdiction was proper, the Court examined whether any conflict with federal law existed. See id. at 74-75, 61 S.Ct. 924, 928. Because there was no conflict with federal law and the State had an interest in the proper maintenance of its sponge fishery, the Court found that the State continued to exercise its traditional police powers. See id.
With this constitutional framework in mind, we examine whether section 910.006(3)(d) conflicts with federal law and whether the prosecution is within the State's police powers. First, we examine whether the State's exercise of jurisdiction in this case conflicts with any provisions in the United States Constitution, specifically the provision granting Congress the right to define piracies and felonies on the high seas, see U.S. Const., art. I, § 8, cl. 10, the provision granting the federal government the power to enter treaties, see U.S. Const., art. I, § 10, cl. 1, and the provision granting the federal courts the power to hear admiralty and maritime cases, see U.S. Const., art III, § 2, cl. 1.

1. Power to Define Piracies and Felonies

The Constitution's grant of power to Congress to "define and punish Piracies and Felonies committed on high Seas," U.S. Const., art. I, § 8, cl. 10, does not preclude states from punishing an act that also violates the state's laws. The same act or omission can offend the laws of both the state and federal government. See Abbate, 359 U.S. at 194, 79 S.Ct. 666 ("[A]n act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each.") (quoting United States v. Lanza, 260 U.S. 377, 382, 43 S.Ct. 141, 142, 67 L.Ed. 314 (1922)). For example, although the United States Constitution grants Congress the power to "define and punish ... offenses against the Law of Nations," U.S. Const., art. I, § 8, cl. 10, both Congress and the states can prosecute a criminal for counterfeiting foreign currency. See United States v. Arjona, 120 U.S. 479, 487, 7 S.Ct. 628, 632, 30 L.Ed. 728 (1887). Therefore, the same felony on the high seas can violate the laws of both the United States and a state, and be subject to prosecution by both the state and the federal government. Accordingly, this constitutional provision is not implicated.

2. Treaty Clause

We next turn to the constitutional provision relied on by the Fifth District, Article I, Section 10, Clause 1, of the United States Constitution,[8] which prohibits states from entering treaties. See Stepansky, *1032 707 So.2d at 879. According to the Fifth District, the State is unable to prosecute this crime because Florida is constitutionally prohibited from entering into a treaty with the flag state, Liberia. See id.
Stepansky asserts this prosecution is prevented by the flag-state rule set forth in the Geneva Convention on the High Seas, Apr. 29, 1958, art. VI, 13 U.S.T. 2313, 2315, 450 U.N.T.S. 82, 86.[9] However, as Stepansky conceded during oral argument, criminal defendants lack standing to raise a violation of an international treaty that is not self-executing.[10]See Skiriotes, 313 U.S. at 76, 61 S.Ct. 924; United States v. Roberts, 1 F.Supp.2d 601, 606 (E.D.La.1998). Article 6 of the Geneva Convention on the High Seas is not a self-executing treaty and does not operate to limit the jurisdiction traditionally asserted by the United States over foreign vessels on the high seas. See United States v. Postal, 589 F.2d 862, 884 (5th Cir.1979); see also Roberts 1 F.Supp.2d at 606. Therefore, the question of whether section 910.006(3)(d) is in violation of this treaty is not properly before this Court.
Further, on the merits, the exercise of jurisdiction in this case is not an attempt by the State to enter a treaty. In Skiriotes, the United States Supreme Court rejected the defendant's argument that the State was preempted from exercising extraterritorial jurisdiction because it would encroach upon the exclusive treaty-making power of the United States. 313 U.S. at 71-72, 61 S.Ct. 924. Instead, the Court reasoned that because the United States would have been able to exercise jurisdiction, the question of whether the State could also exercise jurisdiction was one of federal rather than international law. See id. at 75-77, 61 S.Ct. 924.
International law is not concerned with the question of whether this defendant is prosecuted by a state or the federal government.[11] As a comment to the Restatement (Third) of Foreign Relations (1986) [hereinafter Restatement], explains:
Since international and other foreign relations law are the law of the United States, under the Supremacy Clause of the Constitution an exercise of jurisdiction by a State that contravenes the limitations of §§ 402-403 is invalid....
International law normally is not concerned with how authority to exercise jurisdiction is allocated within a state's domestic constitutional order. Whether a State may exercise jurisdiction that the United States is entitled to exercise under international law is, therefore, generally a question only of United States law. Subject to constitutional limitations, a State may exercise jurisdiction on the basis of territoriality, including effects within the territory, and, in some respects at least, on the basis of citizenship, residence, or domicile in the State.
Id. at § 402 cmt. k (emphasis supplied). Stepansky does not dispute that the federal government could prosecute him for this crime. See 18 U.S.C. § 7(8) (1994); Roberts, 1 F.Supp.2d at 607-08; United States v. Pizdrint, 983 F.Supp. 1110, 1112-13 (M.D.Fla.1997). Thus, because the United States can exercise jurisdiction in this case, so may the State of Florida as long *1033 as the State's actions do not conflict with federal law. See Restatement, supra, § 402 cmt. k.
Although Stepansky hypothesizes that the treaty clause would prevent the State from prosecuting a foreign national under Florida's special maritime criminal jurisdiction statute, that scenario is not presented in this case. The general rule is that absent a First Amendment challenge, "a person to whom a statute may be constitutionally applied cannot challenge the statute on the ground that it may be unconstitutionally applied to others." Massachusetts v. Oakes, 491 U.S. 576, 581, 109 S.Ct. 2633, 105 L.Ed.2d 493 (1989); see City of Daytona Beach v. Del Percio, 476 So.2d 197, 202 (Fla.1985). "This general rule reflects two `cardinal principles' of our constitutional order: the personal nature of constitutional rights and the prudential limitations on constitutional adjudication." Los Angeles Police Dep't v. United Reporting Pub'g Corp., ___ U.S. ___, ___, 120 S.Ct. 483, 489, 145 L.Ed.2d 451 (1999). Therefore, because the exercise of jurisdiction is proper as to Stepansky, who is a United States citizen, the Fifth District's holding that the statute was facially invalid as a violation of article I, section 10, see Stepansky, 707 So.2d at 879, was erroneous.

3. Power of Federal Courts to Hear Admiralty Cases

Lastly, the federal constitution's grant of power to federal courts to hear "all Cases of admiralty and maritime Jurisdiction," U.S. Const., art. III, § 2, cl. 1, also does not preclude a state's exercise of concurrent jurisdiction with the federal government within the state's territorial waters. See Askew v. American Waterways Operators, Inc., 411 U.S. 325, 341, 93 S.Ct. 1590, 36 L.Ed.2d 280 (1973); see also Hoopengarner v. United States, 270 F.2d 465, 471 (6th Cir.1959) (finding that the federal government may exercise concurrent jurisdiction with states over crimes committed within the states' territorial waters). "It is black letter law ... that the mere grant of jurisdiction to a federal court does not operate to oust a state court from concurrent jurisdiction over the cause of action." Gulf Offshore Co. v. Mobil Oil Corp., 453 U.S. 473, 479, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981).
Certainly, as Stepansky concedes, the federal government would be able to exercise jurisdiction over this criminal matter pursuant to 18 U.S.C. § 7(8), which extends federal maritime jurisdiction to offenses committed by or against United States nationals on board foreign vessels scheduled to depart from or arrive in the United States. See Roberts, 1 F.Supp.2d at 607-08; Pizdrint, 983 F.Supp. at 1112-13; see also 18 U.S.C.A. § 2111 (1984) (criminalizing robberies committed within the federal maritime jurisdiction); 18 U.S.C. § 2241 (1994) (criminalizing aggravated sexual abuse in the federal maritime jurisdiction). There is no indication, however, that this grant of federal jurisdiction is exclusive.[12] In fact, the statute conferring jurisdiction on the federal courts over all federal crimes, such as robberies and assaults within the federal maritime jurisdiction, specifically provides that: "Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof." 18 U.S.C. § 3231 (1994).
The courts will infer congressional intent to preempt state legislation if "[t]he scheme of federal regulation [is] so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," the federal legislation *1034 "touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject," or the "object sought" by the federal legislation "may reveal the same purpose." Ray, 435 U.S. at 157, 98 S.Ct. 988 (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). Unlike the comprehensive federal regulations governing certification of oil tankers and standards of oil tanker operation at issue in Ray and Locke, ___ U.S. ___, 120 S.Ct. 1135, 146 L.Ed.2d 69, the statutes at issue in this case do not involve a scheme of comprehensive federal regulations that are so pervasive as to give rise to a reasonable inference that Congress intended to preempt most state legislation.
The United States Supreme Court has explained, "Even though Congress has acted in the admiralty area, state regulation is permissible, absent a clear conflict with the federal law." Askew, 411 U.S. at 341, 93 S.Ct. 1590; see Ray, 435 U.S. at 157, 98 S.Ct. 988. Thus, "the general rule on preemption in admiralty is that states may supplement federal admiralty law as applied to matters of local concern, so long as state law does not actually conflict with federal law or interfere with the uniform working of the maritime legal system." Pacific Merchant Shipping Ass'n v. Aubry, 918 F.2d 1409, 1422 (9th Cir.1990); see also Thomas J. Schoenbaum, Admiralty and Maritime Law § 2-5 (2d ed. 1994 & Supp.1999). In fact, in Locke, the Supreme Court found that the federal Ports and Waterways Safety Act of 1972 and the Oil Pollution Act of 1990 did not displace state laws which, "rather than imposing substantive regulation of a vessel's primary conduct, establish liability rules and financial requirements relating to oil spills." ___ U.S. at ___, 120 S.Ct. at 1146.
This Court has previously rejected the argument that the federal courts have exclusive jurisdiction over crimes committed on the high seas precluding the State from exercising its criminal jurisdiction. See Keen v. State, 504 So.2d 396, 398-99 (Fla.1987), disapproved on other grounds, Owen v. State, 596 So.2d 985 (Fla.1992). The defendant in Keen committed murder while on the high seas. We found that because the element of premeditation occurred in Florida, jurisdiction was properly exercised under section 910.005(2), Florida Statutes (1977), which grants Florida jurisdiction over crimes committed partly within the state. 504 So.2d at 398-99. Although the State in Keen exercised a different basis for jurisdiction over the defendant, the critical holding of Keen is that the grant of criminal maritime jurisdiction to the federal courts in 18 U.S.C. § 7 is concurrent rather than exclusive in cases where the offense violates the laws of both sovereigns. Keen, 504 So.2d at 399.

4. Conclusion: No Conflict With Federal Law

We conclude that the structure of section 910.006 ensures that it will not violate the constitution, that it will not conflict with the exercise of jurisdiction by federal courts, and that it will not interfere with the uniform working of the maritime legal system. See Pacific Merchant Shipping Ass'n, 918 F.2d at 1422. Section 910.006 provides that the State is not authorized to prosecute a crime under this statute unless federal law "prohibit[s] substantially the same act or omission." § 910.006(4). Further, pursuant to section 910.006(4), "No person shall be tried under this section if that person has been tried in good faith for substantially the same act or omission." Similarly, section 910.006(5)(a)1. specifies: "This section is not intended to assert priority over or otherwise interfere with the exercise of criminal jurisdiction by the United States, the flag state, or the state in whose territory an act or omission occurs."
Accordingly, section 910.006 makes clear that the State will not exercise jurisdiction if the federal government, the foreign flag *1035 state, or the state in whose territory the act occurs prosecutes the defendant. Therefore, under Tenth Amendment federalism principles, the State's exercise of jurisdiction in this case is not preempted by federal law. See Skiriotes, 313 U.S. at 74-75, 61 S.Ct. 924; Pacific Merchant Shipping Ass'n, 918 F.2d at 1422.

B. The State's Sovereign Authority the Effects Doctrine
Finding that the exercise of jurisdiction in this case does not conflict with the constitution or federal law, our inquiry turns to whether the State's exercise of jurisdiction is within the State's traditional police powers. The State asserts that the "effects" doctrine provides a proper basis for the State to assert jurisdiction in this case although the criminal acts were committed outside the State's territorial waters.
As Justice Holmes, writing for the United States Supreme Court, recognized, "Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a State in punishing the cause of the harm as if he had been present at the effect, if the State should succeed in getting him within its power." Strassheim v. Daily, 221 U.S. 280, 285, 31 S.Ct. 558, 55 L.Ed. 735 (1911); see also Hartford Fire Ins. Co. v. California, 509 U.S. 764, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993) (applying effects doctrine to allow states to bring a Sherman Act claim in federal court against foreign defendants). The Restatement of Foreign Relations provides that a state may exercise its jurisdiction over criminal acts committed outside its territorial boundaries of the State if the acts have significant effects within the state. See Restatement, supra, § 402.[13] Likewise, the Supreme Court of Alaska has relied upon the principles incorporated in the effects doctrine to exercise criminal jurisdiction in the waters outside the geographical boundaries of that state. See State v. Sieminski, 556 P.2d 929 (Alaska 1976); see also State v. Bundrant, 546 P.2d 530, 555-56 (Alaska 1976).
In fact, the Fifth District acknowledged the effects doctrine as a basis for asserting jurisdiction beyond the state's geographic boundaries. See Stepansky, 707 So.2d at 878. As properly explained by the Fifth District, "The state may ... exercise criminal jurisdiction over acts committed beyond this three mile limit, at least where such acts have an effect in this state and there is no conflict with federal law and no foreign nation has criminal jurisdiction over said acts." Id. at 877-78. Accordingly, we conclude that Florida's sovereign authority includes the ability to exercise criminal jurisdiction over acts committed outside the territorial limits of the State under the effects doctrine as long as the exercise of jurisdiction does not conflict with federal law and the exercise *1036 of jurisdiction is a reasonable application of the effects doctrine.[14]
The stated purpose of section 910.006 as set forth in the legislative findings and intent is as follows:
(1) LEGISLATIVE FINDINGS AND INTENT.
(a) The State of Florida is a major center for international travel and trade by sea.
(b) The state has an interest in ensuring the protection of persons traveling to or from Florida by sea.
(c) The state has an interest in cooperating with the masters of ships and the governments of the United States and the other states in the maintenance of law and order on board ship.
(d) The interests of the state do not in principle require a general assertion of primary jurisdiction over acts or omissions at sea that would duplicate or conflict with the execution of any law enforcement responsibility of any other jurisdiction.
(e) The State of Florida should establish special maritime criminal jurisdiction extending to acts or omissions on board ships outside of the state under the circumstances delimited in this section.
§ 910.006(1). Thus, the State asserts that if the federal government and the foreign government under whose flag the cruise ship sails fail to prosecute crimes on cruise ships, Florida's tourism industry will suffer a significant adverse effect.
Federal courts have recognized that a criminal act having a similar adverse effect on the United States will justify the exercise of federal jurisdiction over crimes on cruise ships that would otherwise go unprosecuted. See Roberts, 1 F.Supp.2d at 608; Pizdrint, 983 F.Supp. at 1113. In those cases, the federal courts found a significant effect on the United States because the cruise lines conducted substantial business in the United States, the cruises began and ended in the United States, and federal law enforcement agents were required to become involved in prosecution. See Roberts, 1 F.Supp.2d at 608; Pizdrint, 983 F.Supp. at 1113.
Similarly, in this case the Legislature has determined that the State of Florida is a "major center for international travel and trade by sea" and that the "state has an interest in ensuring the protection of persons traveling to or from Florida by sea." § 910.006(1)(a), (c). Florida's tourism industry could be significantly affected if crimes that occur on board cruise ships where a majority of the fare-paying passengers embark and disembark in Florida were to go unprosecuted. We emphasize that pursuant to this statute the State exercises limited jurisdiction by operating only where the crime has not been prosecuted by any other government entity, including the federal government or the foreign country in which the ship is registered.

CONCLUSION
Because neither the United States, any other state, nor the flag state has attempted *1037 to prosecute these crimes, Florida may prosecute Stepansky for burglary and attempted sexual battery in accordance with Florida's narrowly drawn statutory scheme. In this case, if the State were precluded from prosecuting Stepansky, this crime could go unpunished. We find that the prosecution by the State of Florida under these narrow circumstances is a reasonable application of the effects doctrine.
In conclusion, individual states have been accorded wide latitude, by the United States Constitution, the Supreme Court and pertinent federal legislation, to assert concurrent jurisdiction over maritime criminal matters extending beyond the State's territorial limits. Just as the federal government has the authority to prosecute crimes under these circumstances without offending international law, basic principles of federalism allow the states to prosecute under the effects doctrine when there is no conflict with federal law and the exercise of jurisdiction is reasonable. Section 910.006(3)(d) is of limited scope and designed to take effect only when neither the flag state nor the United States government acts in a particular case. Accordingly, we find that section 910.006(3)(d) is constitutional as applied. We reverse the decision of the Fifth District Court of Appeal and remand for proceedings consistent with this opinion.
It is so ordered.
SHAW, ANSTEAD, LEWIS and QUINCE, JJ., concur.
WELLS, J., dissents with an opinion in which HARDING, C.J., concurs.
WELLS, J., dissenting.
I dissent. I believe that the majority misinterprets both case law and the Restatement (Third) of Foreign Relations (1986) in finding section 910.006(3)(d), Florida Statutes (1995), to be constitutional as applied in this case. I would find, as did the Fifth District below, that the Legislature lacked constitutional authority to enact section 910.006(3)(d) as it is presently written.
As the Fifth District held, no federal constitutional or statutory authority exists for the Florida Legislature to assert an extension of the territorial boundaries of Florida so as to empower Florida courts to convict nonresidents of Florida aboard foreign vessels for criminal acts under Florida law. Neither the principles of federalism nor the effects doctrine affords Florida the authority to assert jurisdiction over a nonresident of Florida for maritime criminal matters extending beyond the state's territorial limits.
As to the principles of federalism, the majority finds that the statute is constitutional as applied because it does not conflict with federal law and because the prosecution is within the state's police powers. I disagree with this reasoning and would find the statute to be facially unconstitutional as well as unconstitutional as applied.
The majority cites United States v. Arjona, 120 U.S. 479, 487, 7 S.Ct. 628, 30 L.Ed. 728 (1887), for the proposition that Article I, Section 8, Clause 10 of the United States Constitution does not preclude a state from punishing a felony on the high seas that also violates the state's laws. However, the only reference to concurrent jurisdiction in Arjona is a statement in dicta that a state can exercise concurrent jurisdiction with the federal government in prosecuting the counterfeiting of foreign currency on United States soil. 120 U.S. at 487, 7 S.Ct. 628. Arjona concerns neither crimes allegedly committed on ships nor extraterritorial jurisdiction in international waters, which are the circumstances of the instant case. Thus, the Arjona reference to state jurisdiction does not support the constitutionality of the statute at issue here. The Court in Arjona did hold, relevant to this case, that
[a] state is expressly prohibited [by the United States Constitution] from entering into any "treaty, alliance, or confederation."' *1038 Article 1, § 10, cl. 1. Thus all official intercourse between a state and foreign nations is prevented, and exclusive authority for that purpose given to the United States.
120 U.S. at 483, 7 S.Ct. 628. This holding supports the proposition that, as the Fifth District stated below, the Florida Legislature has no authority to enact a statute for prosecution of a criminal act by a nonresident of Florida which is alleged to have occurred either within the territorial jurisdiction of Liberia or within the extraterritorial jurisdiction of the United States pursuant to 18 U.S.C., § 7(8) (1994).
The United States Constitution also provides in Article II, Section 2, that the federal judicial power extends "to all cases of admiralty and maritime jurisdiction." The majority asserts that this constitutional provision does not preclude a state's exercise of jurisdiction within the state's territorial waters. However, this case does not concern concurrent jurisdiction within the territorial waters of Florida. Rather, it concerns a crime on the high seas, in international waters. In Keen v. State, 504 So.2d 396 (Fla.1987), we rested Florida courts' jurisdiction upon the following:
Keen's first claim here is that Florida is without jurisdiction to try him for this murder. According to Keen's theory, because the murder was committed on the high seas outside Florida's territorial jurisdiction, the federal government has exclusive jurisdiction to try him for this crime by virtue of 18 U.S.C. § 7. We disagree. Our decision in Lane v. State, 388 So.2d 1022 (Fla.1980), controls. In Lane we were faced with the factual situation wherein the charged offense, first-degree murder, was commenced in Florida and concluded in Alabama. Recognizing that the fatal blow to the victim was probably struck in Alabama, we held that pursuant to section 910.005(2), Florida Statutes (1977), Florida had jurisdiction to try the defendant. Id. at 1026. We reasoned that when one of the essential elements of the offense occurs in Florida, Florida courts have the power to try the defendant; whether an essential element of the offense occurred within the state is a factual question to be determined by the jury under appropriate instructions. Id. at 1028. Sub judice, it is clear from the record that the essential element of premeditation occurred within Florida. The jury was properly instructed by the trial court that in order to return a verdict of guilty, they must find that an essential element of the crime occurred within the state.

504 So.2d at 398-99 (emphasis added). Section 910.006(3)(d), the statutory subsection under scrutiny in this case, does not require that one of the essential elements of a crime being prosecuted occur within the territorial boundaries of Florida. Thus, Keen does not support the assertion of state jurisdiction in this case.
Moreover, no concurrent state jurisdiction as to nonresidents of Florida is created by 18 U.S.C., § 7(8), which Congress enacted in 1994 to extend federal maritime jurisdiction for crimes committed by or against a national of the United States while aboard a foreign vessel on the high seas if that vessel, pursuant to schedule, departed from or arrived in the United States, as to nonresidents of Florida.
The majority further states that Florida has jurisdiction under an effects exception to the flag-state rule[15] because the alleged crime potentially causes harm to Florida's tourist industry. In support of its effects argument, the majority cites Hartford Fire Insurance Co. v. California, 509 U.S. 764, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993), and Strassheim v. Daily, 221 U.S. 280, 285, 31 S.Ct. 558, 55 L.Ed. 735 (1911). In Hartford, the Court held that states and private *1039 parties could assert jurisdiction over foreign defendants under the federal Sherman Anti-Trust Act even if the laws in the foreign state encouraged the conduct prohibited by the Act. 509 U.S. at 798, 113 S.Ct. 2891. In explaining the jurisdictional basis for the case, the Court stated, "it is well established by now that the Sherman Act applies to foreign conduct that was meant to produce and did in fact produce some substantial effect on the United States." Id. at 796, 113 S.Ct. 2891. The Court in Hartford did not address jurisdiction in the context of effects upon a state of the United States of alleged criminal activity on a foreign ship in international waters by a United States citizen who is not a Florida resident. In Strassheim, the Court held that a state may extradite a person accused of a crime from another state if the alleged crime was begun by an overt act in the state that is attempting to extradite. Strassheim does not support an argument that Florida's prosecution of a crime that indisputably began and ended in international waters is authorized because of alleged effects on the State of Florida.
The alleged act that led to criminal charges against Stepansky occurred 100 nautical miles from Florida. Thus, prosecution of this case properly lies with the United States federal government under the United States Constitution and federal statutes and treaties or with the Liberian government under the flag-state rule.
The majority points to the Restatement (Third) of Foreign Relations § 402 cmt. k (1986), which provides that the issue of whether a State can exercise concurrent jurisdiction with the United States is a question of federal rather than international law. We note here that the same section of Restatement (Third) of Foreign Relations cited by the dissent provides as follows relevant to a State of the United States:
A State may not apply its laws to a person outside its territory merely on the basis that he is a national of the United States, but it may apply at least some laws to a person outside its territory on the basis that he is a citizen, resident, or domiciliary of the State. Cases that have upheld such exercises of jurisdiction, however, have generally involved acts or omissions that also had effect within the State. See also Skiriotes v. Florida, 313 U.S. 69, 61 S.Ct. 924, 85 L.Ed. 1193 (1941).
Restatement (Third) of Foreign Relations § 402 reporter's note 5 (1986) (emphasis added) (citations omitted). In Skiriotes, which the majority relies upon in support of its argument, the Court stated that a key factor in its holding was that Florida's criminal jurisdiction was based upon the prosecution for an alleged crime committed by a Florida resident:
Even if it were assumed that the locus of the offense was outside the territorial waters of Florida, it would not follow that the State could not prohibit its own citizens from the use of the described divers' equipment at that place. No question as to the authority of the United States over these waters, or over the sponge fishery, is here involved. No right of a citizen of any other State is here asserted. The question is solely between appellant and his own State. The present case thus differs from that of Manchester v. Massachusetts, supra, for there the regulation by Massachusetts of the menhaden fisheries in Buzzards Bay was sought to be enforced as against the citizens of Rhode Island and it was in that relation that the question whether Buzzards Bay could be included within the territorial limits of Massachusetts was presented and was decided favor of that Commonwealth. The question as to the extent of the authority of a State over its own citizens on the high seas was not involved.
313 U.S. at 76-77, 61 S.Ct. 924 (emphasis added) (citation omitted). Section 910.006(3)(d) does not purport to regulate only the conduct of residents of Florida. Moreover, the statute is applied in this case to prosecute a nonresident of Florida whose alleged crime was committed against a nonresident of Florida.
*1040 As the majority notes, the federal special maritime jurisdiction asserted in 18 U.S.C. § 7(8) extends federal criminal jurisdiction to offenses committed by or against United States nationals. However, even if concurrent jurisdiction did exist for Florida under the effects doctrine and the Restatement (Third) of Foreign Relations, we note that the breadth of section 910.006(3)(d), Florida Statutes, purports to extend jurisdiction over "acts or omissions" without stating whether such acts or omissions must be committed by a Florida resident. Thus, the Florida statute asserts jurisdiction over all United States nationals, contrary to the provision of Restatement (Third) of Foreign Relations noted above, as well as potentially over foreign nationals. I conclude that the reach of the statutory subsection is over-broad and extends beyond any potential concurrent federal jurisdiction, and thus is invalid, as the Fifth District below stated, unless otherwise authorized under a federal statute, the United States Constitution, or international law.
HARDING, C.J., concurs.
NOTES
[1] Section 910.006(3), Florida Statutes (1995), provides in relevant part:

The special maritime criminal jurisdiction of the state extends to acts or omissions on board a ship outside of the state under any of the following circumstances:
. . . .
(d) The act or omission occurs during a voyage on which over half of the revenue passengers on board the ship originally embarked and plan to finally disembark in this state, without regard to intermediate stop-overs.
[2] The term "nautical mile" is often used interchangeably with the term "geographic mile," although a geographic mile is actually slightly longer than a nautical mile. See Op. Att'y Gen. Fla. 95-51 n. 14 (1995) (explaining that a "`geographic' mile is the length of one minute of the arc of the equator, or 6,087.08 feet," a "`nautical' mile is 6,076.11549 feet," and a "`statute' or `English' mile (used on land) is 5,280 feet").
[3] The United States has also declined our invitation to file an amicus brief in this case.
[4] Section 910.006(2)(a) defines the "flag state" as the state under whose laws the ship is registered.
[5] Florida's boundary extends "along the edge of the Gulf Stream or along a line three geographic miles from the Atlantic coastline... whichever is greater" and three leagues from the Gulf of Mexico coastline. Art. II, § 1(a), Fla. Const.
[6] Other sections of this statute extend the jurisdiction of this State to prosecute criminal acts committed on cruise ships in other circumstances, including where "[t]he victim is a Florida law enforcement officer on board the ship in connection with his or her official duties," § 910.006(3)(e), "[t]he act or omission is one of violence ... generally recognized as criminal, and the victim is a resident of this state," § 910.006(3)(f), or the "act or omission causes or constitutes an attempt or conspiracy to cause a substantial effect in this state that is an element of the offense charged." § 910.006(3)(g).
[7] The Supremacy Clause, found in article VI, clause 2 of the United States Constitution, provides that:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.
[8] "No State shall enter into any Treaty, Alliance, or Confederation...." U.S. Const., art. I, § 10, cl. 1. The United States Constitution grants the President the power "with the Advice and Consent of the Senate, to make Treaties, provided two thirds of the Senators present concur." U.S. Const., art. II, § 2, cl. 2.
[9] Article 6 of the Geneva Convention on the High Seas sets forth the flag-state rule that "[s]hips shall sail under the flag of one State only and, save in exceptional cases expressly provided for in international treaties or in these articles, shall be subject to its exclusive jurisdiction on the high seas."
[10] "The term `self-executing' should be reserved for `international agreements' that are meant, and are specific enough to be able, to establish rights and duties of individuals directly enforceable in domestic courts." United States v. Roberts, 1 F.Supp.2d 601, 606 n. 2 (E.D.La.1998) (quoting Stefan A. Riesenfield, Restatement: International Agreements, 14 Yale J. Int'l L. 455, 463 (1989)).
[11] We also note that the federal form of government of the United States distinguishes our governmental structure from other countries where only the national government has the authority to prosecute crimes.
[12] The fact that there is no indication that federal maritime jurisdiction is exclusive is particularly significant when contrasted with other federal statutes that specifically grant exclusive jurisdiction in the federal courts. See, e.g., 18 U.S.C. § 3231 (1994) (granting exclusive original jurisdiction in federal district courts of all offenses against the laws of the United States); 28 U.S.C. § 1338 (1994) (granting federal courts exclusive original jurisdiction over patents).
[13] The Restatement of Foreign Relations provides:

[A] state has jurisdiction to prescribe law with respect to:
(1) (a) conduct that, wholly or in substantial part, takes place within its territory;
(b) the status of persons, or interests in things, present within its territory;
(c) conduct outside its territory that has or is intended to have substantial effect within its territory;
(2) the activities, interests, status, or relations of its nationals outside as well as within its territory; and
(3) certain conduct outside its territory by persons not its nationals that is directed against the security of the state or against a limited class of other state interests.
Restatement, supra, § 402 (emphasis supplied). Accordingly, the Restatement recognizes that states may prosecute a person for an act committed outside the state on the basis that the act has a substantial effect within the state, similar to the ability to prosecute an act that occurred wholly or partially within the territory of the state. See id. § 402(1). This is in addition to the ability of states to prosecute on the basis that the defendant is a citizen, resident or domiciliary of the state. If the basis of jurisdiction is that the defendant is a state citizen or resident, the act must generally also have a significant effect within the State. See id. § 402 reporter's note 5.
[14] Stepansky relies upon Mounier v. State, 178 So.2d 714 (Fla.1965), in support of his argument that the State of Florida has no power to prosecute a criminal act that occurred outside the State's territorial boundaries. However, we do not find that case to be controlling. In Mounier, the statute at issue criminalized spear-fishing in the waters of Monroe County, Florida. Id. at 714-15. The defendant allegedly committed the offense outside Monroe County, Florida and we found that the alleged crime was not committed within the reach of the criminal statute. See id. at 716. We specifically declined to reach the question of whether the statute also could have criminalized acts committed outside the State's territorial waters. See id.; see also State v. Hill, 372 So.2d 84, 85 (Fla.1979) (declining to reach question of whether statute could criminalize conduct occurring outside territorial jurisdiction of State where the defendant's actions clearly occurred within Florida waters). Thus, Mounier is not instructive in answering the question of whether the State may exercise jurisdiction over acts committed outside the State's territorial waters.
[15] Geneva Convention on the High Seas, art. 6, § 1, April 15, 1958, 13 U.S.T. 2312, T.I.A.S. No. 520.