UNITED STATES of America

v.

Kingsley ROBERTS.

Criminal Action No. 97–367.

United States District Court, E.D. Louisiana.

April 6, 1998.

Claude John Kelly, III, Federal Public Defender, New Orleans, LA, for Kingsley Roberts.

Greg Gerard Guidry, Mary Jude Darrow, U.S. Attorney's Office, New Orleans, LA, for U.S.

### ORDER AND REASONS

VANCE, District Judge.

Before the Court is defendant Kingsley Robert's motion to dismiss for lack of jurisdiction, pursuant to Federal Rule of Criminal

Procedure 12(b)(2). For the reasons set forth below, the motion is DENIED.

## I. BACKGROUND

Defendant Roberts was indicted by a federal grand jury on December 11, 1997 and charged with one count of sexual abuse of a minor, 18 U.S.C. § 2243(a), and one count of abusive sexual contact with a minor, 18 U.S.C. § 2244(a). The crimes allegedly occurred on board a cruise ship, the Carnival Cruise Lines' vessel M/V CELEBRATION. Roberts is a national of St. Vincent & the Grenadines, and he was employed by the M/V CELEBRATION at the time the alleged incident took place. The victim is a United States citizen. The United States alleges that the crimes were committed "in an area within the special maritime and territorial jurisdiction of the United States" and that jurisdiction is proper under 18 U.S.C. §§ 7(1) or (8).

It is not disputed that the alleged incident occurred while the cruise ship was "in international waters approximately 63 miles off the coast of Puna Mols, Mexico." Aff. of Kelly C. Bryson, Special Agent of the Federal Bureau of Investigation, at ¶ 2 (attached to Def.'s Mem., Exh. B). The following facts are also uncontested: Carnival Corporation ("Carnival") owns the M/S CELEBRATION, and the company is incorporated under the laws of the Republic of Panama. *See* Carnival's Annual Report, Form 10–K for the Securities and Exchange Commission (attached to Def.'s Mem., Exh. C) (hereinafter referred to as "Annual Report"); Letter from Arnaldo Perez, Vice Pres. and General Counsel of Carnival Corp., to Kelly Priceson, Federal Bureau of Investigation, Feb. 27, 1998, at ¶¶ 1, 3 (attached to Government's Opp., Exh. A) (hereinafter referred to as "Carnival Letter"). The M/V CELEBRATION is registered in Liberia and flies a Liberian flag. Annual Report at 5; Government's Opp. at 2. Carnival's shoreside operations and its corporate headquarters are located in Miami, Florida. Annual Report at 1, 19; Carnival Letter ¶ 2. Carnival is a public company, its stock is traded on the New York Stock Exchange, and some of its shareholders are United States citizens. Annual Report at 1; Carni-

val Letter ¶¶ 6, 7. Further, the M/S CELEBRATION begins and ends its cruises in the United States, and the majority of its passengers are United States citizens. Carnival Letter ¶¶ 4–5. It is also undisputed that neither Panama nor Liberia has taken any steps to prosecute the defendant.

The defendant moves this Court to dismiss the indictment on the grounds that the United States does not have jurisdiction over the alleged incident. Roberts contends that jurisdiction is not proper under § 7(1) because the M/V CELEBRATION is not an American vessel. The defendant also states that jurisdiction under 18 U.S.C. § 7(8) is limited "[t]o the extent permitted by international law," and, in this case, jurisdiction is not proper under accepted principles of international law. The government argues that jurisdiction is proper because the M/V CELEBRATION is owned in part by American citizens, and international law permits this exercise of jurisdiction under the objective territorial and the passive personality theories.

## II. DISCUSSION

Defendant Roberts is charged with violating 18 U.S.C. §§ 2243(a) and 2244(a). Section 2243(a) provides that whoever "in the special maritime and territorial jurisdiction of the United States ... knowingly engages in a sexual act with another person who has attained the age of 12 years but has not attained the age of 16 years ... or attempts to do so, shall be fined under this title, imprisoned not more than 15 years, or both." Section 2244(a)(3) states that "[w]hoever, in the special maritime and territorial jurisdiction of the United States ... knowingly engages in or causes sexual contact with or by another person, if so to do would violate subsection (a) of section 2243 of this title had the sexual contact been a sexual act, shall be fined under this title, imprisoned not more than two years, or both."

■ Congressional intent determines the extraterritorial effect of penal statutes. *See United States v. Bowman,* 260 U.S. 94, 98, 43 S.Ct. 39, 41, 67 L.Ed. 149 (1922) ("If punishment of [crimes against private individuals] is to be extended to include those committed

outside of the strict territorial jurisdiction, it is natural for Congress to say so in the statute, and failure to do so will negative the purpose of Congress in this regard."); *United States v. Vasquez–Velasco,* 15 F.3d 833, 839 (9th Cir.1994) ("To determine whether a given [penal] statute should have extraterritorial application in a specific case, courts look to congressional intent." (internal quotations and citations omitted)); *United States v. Baker,* 609 F.2d 134, 136 (5th Cir.1980) (explaining that Congress may attach extraterritorial effect to its penal enactments).

■ In this case, Congress intended for §§ 2243 and 2244 to reach beyond the strict territorial jurisdiction of the United States because the statutes provide that the laws operate within the "special maritime and territorial jurisdiction of the United States." *See Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 440, 109 S.Ct. 683, 691, 102 L.Ed.2d 818 (1989) ("When it desires to do so, Congress knows how to place the high seas within the jurisdiction reach of a statute."); *United States v. Montford,* 27 F.3d 137, 139 (5th Cir.1994) ("Several federal criminal statutes cover acts within the special maritime and admiralty jurisdiction of the United States." (*citing* 18 U.S.C. §§ 81 (arson), 113 (assault), and 1111 (murder))); *United States v. Perez–Herrera,* 610 F.2d 289, 290 (5th Cir.1980) ("Congress expressly provided that certain acts, such as murder, violate federal law when committed on board ships registered in the United States or owned by American citizens.").

The question in this case is whether the alleged crimes occurred within the special maritime and territorial jurisdiction of the United States as set forth in 18 U.S.C. §§ 7(1) and 7(8). These sections state that the special maritime and territorial jurisdiction includes:

(1) *The high seas,* any other waters within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State, and any vessel belonging in whole or in part to the United States or any citizen thereof, or to any corporation created by or under the laws of the United States, or of any State, Territory, District, or possession thereof, when such vessel is within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State.

. . . .

(8) To the extent permitted by international law, any foreign vessel during a voyage having a scheduled departure from or arrival in the United States with respect to an offense committed by or against a national of the United States.

18 U.S.C. §§ 7(1), (8) (emphasis added). The United States contends that jurisdiction is proper under either of these provisions.

### A. 18 U.S.C. § 7(1)

There is Fifth Circuit caselaw which suggests that § 7(1) extends the special maritime and territorial jurisdiction of the United States to the "high seas," without regard to whether the vessel is in whole or in part American-owned. *See Nixon v. United States,* 352 F.2d 601, 602 (5th Cir.1965) (stating that record supported finding that murder and assault took place on high seas, so that case was within special maritime and territorial jurisdiction of United States). *See also United States v. Tanner,* 471 F.2d 128, 140 (7th Cir.1972) (noting that offenses occurred on foreign vessel and § 7(1) would require showing that offenses took place "either upon the 'high seas' or upon any other body of water that is both within the United States' admiralty and maritime jurisdiction and without the jurisdiction of any particular state"); *United States v. Walker,* 575 F.2d 209, 213 (9th Cir.1978) (implying that special maritime and territorial jurisdiction of the United States includes acts that occurred on the high seas and outside states' boundaries). However, in *United States v. McRary,* 665 F.2d 674, 677 (5th Cir.1982), the Fifth Circuit stated that § 7 "necessarily restricts its reach to vessels owned in whole or in part by United States citizens." *See also United States v. Ross,* 439 F.2d 1355, 1357–58 (9th Cir.1971) (stating that § 7(1) requires that offense occur on high seas *and* that vessel is registered to the United States).

■ In this case, it is undisputed that the alleged offenses occurred "in international waters approximately 63 miles off the

coast of Puna Mols, Mexico." Aff. of Ms. Bryson ¶ 2. The "high seas" encompasses that part of the ocean which is beyond the territorial sea of any country. *See United States v. Louisiana*, 394 U.S. 11, 23, 89 S.Ct. 773, 781, 22 L.Ed.2d 44 (1969) ("Outside the territorial sea are the high seas, which are international waters not subject to the dominion of any single nation."); *Kollias v. D & G Marine Maintenance*, 29 F.3d 67, 69 (2d Cir.1994) ("[T]he high seas ... have been defined as those waters beyond the territorial waters of the United States, which extend three miles from the coast."). Although the United States has historically adhered to a territorial sea of three miles, international conventions permit a territorial sea of up to 12 miles. *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 441 n. 8, 109 S.Ct. 683, 692 n. 8, 102 L.Ed.2d 818 (1989). It is undisputed that the alleged offenses in this case occurred well outside the 12–mile limit of any nation.

However, although it is undisputed that the M/V CELEBRATION is owned by the Carnival Corporation, and that some of Carnival Corporation's shareholders are United States citizens, the M/V CELEBRATION is not an American vessel and "courts have applied [the ownership provision of 18 U.S.C. § 7(1) ] only to vessels having either United States registry or no registry at all." *Restatement (Third) of Foreign Relations Law* § 502, Reporters' Note 4 (1987) (hereinafter "Restatement"). *See, e.g., Ross*, 439 F.2d at 1358 (finding that case met requirements set forth in § 7(1) because vessel was registered in United States); *Nixon*, 352 F.2d at 602 (noting, alternatively, that jurisdiction would have attached because offenses occurred on vessel of United States ownership and registry); *United States v. Keller*, 451 F.Supp. 631, 636 (D.P.R.1978) (finding jurisdiction under § 7(1) based, in part, on Florida registration and presence on board of United States flag), *aff'd on other grounds, United States v. Arra*, 630 F.2d 836, 840 (1st Cir.1980).

Given the apparent conflict in Fifth Circuit authority over whether § 7(1)'s special maritime jurisdiction covers prohibited acts committed on foreign flag vessels on the high seas, and the fact that the Court finds jurisdiction under 18 U.S.C. § 7(8), *see* discussion *infra*, the Court finds it unnecessary to resolve whether jurisdiction likewise lies under § 7(1).

**B. 18 U.S.C. § 7(8)**

■ The Court concludes that jurisdiction over this case is proper pursuant to 18 U.S.C. § 7(8). Section 7(8) was added to the United States' special maritime and territorial jurisdiction in 1994 as part of the Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103–322, § 120002, 108 Stat. 2021 (Sept. 13, 1994). The statute expressly states that the special maritime jurisdiction of the United States is extended to include "[t]o the extent permitted by international law, any foreign vessel during a voyage having a scheduled departure from or arrival in the United States with respect to an offense committed by or against a national of the United States." 18 U.S.C. § 7(8).

Defendant Roberts argues that international treaties and principles of international law do not permit this Court to exercise jurisdiction over this matter. First, Roberts contends that several international treaties prohibit the United States from asserting its jurisdiction because the treaties state that foreign* vessels are subject to the exclusive jurisdiction of the country whose flag they fly under.[1] Second, Roberts insists that this case does not fall under any of the recognized exceptions to the principle of the "law of the flag."

■ The treaties relied upon by the defendant do not prevent this Court from exercising jurisdiction over the offensive acts. Defendant has failed to show that any of the treaties are self-executing, and treaties "may act to deprive the United States, and hence its courts, of jurisdiction over property and individuals that would otherwise be subject to that jurisdiction" only if the treaties are

---

1. In his brief, Roberts cites to Article XV of the Treaty of Friendship, Commerce and Navigation between the United States and Liberia; Article 6 of the Multilateral Law of the Sea: Convention on the High Seas, to which the United States and Liberia are parties; and Articles 91 and 92 of the United Nations Convention on the Law of the Sea.

self-executing. *United States v. Postal,* 589 F.2d 862, 875 (5th Cir.1979). It is also well established that unless a treaty is self-executing, "that is, unless it expressly creates privately enforceable rights—an individual citizen does not have standing to protest when one nation does not follow the terms of such agreement." *United States v. Bent–Santana,* 774 F.2d 1545, 1550 (11th Cir.1985) *(citing Foster v. Neilson,* 2 Pet. (27 U.S.) 253, 313–14, 7 L.Ed. 415 (1829)).[2]

In *Postal,* the Fifth Circuit explained that "[t]he question whether a treaty is self-executing is a matter of interpretation for the courts when the issue presents itself in litigation and, as is the case of all matters of interpretation, the courts attempt to discern the intent of the parties to the agreement so as to carry out their manifest purpose." *Postal,* 589 F.2d at 876. The Fifth Circuit went on to expressly find that Article VI of the Convention On the High Seas, a treaty and provision relied upon by defendant, is not self-executing and therefore not the equivalent of federal legislation. *Postal,* 589 F.2d at 884. The court in that case concluded that the United States, by ratifying the Convention on the High Seas, did not intend "to incorporate the restrictive language of article 6, which limits the permissible exercise of jurisdiction to those provided by treaty, into its domestic law and make it available in a criminal action as a defense to the jurisdiction of its courts." *Id.* at 878. Bound by Fifth Circuit authority, this Court must conclude that Article VI of the Convention on the High Seas is not self-executing. As a result, defendant Roberts may not rely upon an alleged violation of the treaty as a defense to this Court's jurisdiction.

Similarly, this Court concludes that Articles 91 and 92 of the United Nations Conven-

tion on the Law of the Sea are not self-executing.[3] These provisions, as cited by the defendant, are identical to Article VI of the Convention on the High Seas. Based on the Fifth Circuit's decision in *Postal,* this Court must conclude that Articles 91 and 92 are not self-executing. Thus, these provisions require implementing legislation before they may be enforced in the courts by individuals. *See* George K. Walker, *The Interface of Criminal Jurisdiction and Actions Under the United Nations Charter With Admiralty Law,* 20 Tul.Mar.L.J. 217, 225 n. 41 (1996) ("Many of the High Seas Convention and Territorial Sea Convention's provisions are copied in the 1982 [Law of the Sea] Convention; thus, the need for implementing legislation seems fairly clear." *(citing Postal* )).[4]

Defendant has also failed to demonstrate that the Treaty of Friendship, Commerce and Navigation between Liberia and the United States is self-executing. In any event, the language of the treaty does not specify that a vessel is subject to the exclusive jurisdiction of the country whose flag it flies under. Rather, it merely states that vessels under the flag of either the United States or Liberia shall be "deemed to be the vessels of the Party whose flag is flown." Treaty of Friendship, Commerce and Navigation, Article XV. Thus, the treaty itself does not prohibit the United States from exercising jurisdiction over the alleged offensive acts if jurisdiction is otherwise permitted under international law.

■ International law recognizes five theories of jurisdiction, under which a country is permitted to exercise extraterritorial criminal jurisdiction: (1) territorial jurisdiction—both subjective and objective—based on the location where the offense is committed or the effects of the act; (2) nationality jurisdic-

---

2. In the words of one commentator, the term "self-executing" should be reserved for "international agreements that are meant, and are specific enough to be able, to establish rights and duties of individuals directly enforceable in domestic courts." Stefan A. Riesenfeld, *Restatement: International Agreements,* 14 Yale J. Int'l L. 455, 463 (1989).

3. *See* U.N. Convention on the Law of the Sea, Dec. 10, 1982, U.N.Doc. A/CONF. 62/122, 21 I.L.M. 1261 (1982), *reprinted at* 1992 WL 725374.

4. The Court also notes that the agreement signed by the United States in 1994 was submitted to the Senate for its ratification on October 7, 1994, and it is still pending Congressional approval. Even if ratified, however, this non-self-executing treaty requires enabling legislation to confer rights upon individuals that are enforceable in the courts.

tion, based on the nationality of the offender; (3) protective jurisdiction, based on the protection of the nation's interest, security, and integrity; (4) universal jurisdiction, which amounts to physical custody of the offender;[5] and (5) passive. personality jurisdiction, based on the nationality of the victim. *See United States v. Marino–Garcia,* 679 F.2d 1373, 1380–82 (11th Cir.1982); *United States v. Smith,* 680 F.2d 255, 257–58 (1st Cir.1982); *Rivard v. United States,* 375 F.2d 882, 885–86 (5th Cir.1967).

 In this case, the prosecution of Kingsley Roberts is a valid exercise of both passive personality jurisdiction and objective territorial jurisdiction. The principle of passive personality "asserts that a state may apply law—particularly criminal law—to an act committed outside its territory by a person not its national where the victim of the act was its national." *Restatement* § 402 cmt. g. Although courts are reluctant to embrace passive personality jurisdiction for ordinary torts or crimes, *see id.,* international law does not prohibit Congress from incorporating this principle into its legislation.[6] Indeed, prior to the enactment of § 7(8), Congress applied the passive personality principle in the Omnibus Diplomatic Security and Antiterrorism Act of 1986, 18 U.S.C. § 2332 which makes it a crime to kill, or attempt or conspire to kill, or to cause serious bodily injury, to a national of the United States outside the territory of the United States.[7] Moreover, some courts have recently expressed approval of passive personality jurisdiction. *See, e.g., United States v. Rezaq,* 134 F.3d 1121, 1133 (D.C.Cir.1998) (aircraft piracy); *United States v. Felix–Gutierrez,* 940 F.2d 1200, 1205 (9th Cir.1991) (accessory after the fact); *United States v. Yunis,* 924 F.2d 1086, 1091 (D.C.Cir.1991) (hijacking of Jordanian airliner); *United States v. Benitez,* 741 F.2d 1312, 1316 (11th Cir.1984) (murder of DEA agent). In addition, Congress is moving towards accepting

passive personality jurisdiction outside the realm of terrorism, as evidence by several pieces of legislation. *See* Watson, *supra* note 5, at 11–12. For example, in 1987, Congress expanded United States' special maritime jurisdiction to include crimes against America "outside the jurisdiction of any nation." 18 U.S.C. § 7(7).

This move towards accepting passive personality jurisdiction continued with the passage of § 7(8), which authorizes the United States to exercise its jurisdiction over "any foreign vessel during a voyage having a scheduled departure from or arrival in the United States with respect to an offense committed by or against a national of the United States." 18 U.S.C. § 7(8). Given the specific requirement that the vessel have a scheduled departure from or arrival in the United States, this statute expresses concern for United States nationals but limits jurisdiction to vessels that are most likely to have a connection to America. Indeed, in this case, the M/V CELEBRATION originates and terminates its voyage in the United States, and the majority of its passengers are American citizens. Further, Carnival Corporation has its corporate headquarters in this country and some of its shareholders are United States citizens. The Court must also add that the country whose flag the cruise ship flies under, Liberia, has little to no interest in the alleged offense because neither the victim nor the defendant are Liberian, the vessel does not operate in or around Liberian territory, and the vessel's owners center their corporate operations in the United States. In short, the Court finds that jurisdiction is reasonable in this case pursuant to § 7(8), and it is permitted by international law because it does not intrude upon another sovereign's interest, and it serves to protect America's nationals abroad.

 The objective territorial principle also supports jurisdiction over this matter. Jurisdiction under this principle is asserted

---

5. This principle is generally cited to cover universally prohibited activities, such as the slave trade or piracy. *United States v. Marino–Garcia,* 679 F.2d 1373, 1382 & n. 16 (11th Cir.1982).

6. *See* Geoffrey R. Watson, *The Passive Personality Principle,* 28 Tex. Int'l L.J. 1, 13, 38–40 (1993)

(stating that rules of customary international law do not bar passive personality jurisdiction).

7. The Court also notes that the existence of this statute-aimed specifically at terrorism—contravenes an interpretation of § 7(8) that limits its application to terrorist acts.

over foreigners for an act committed outside the United States that produces substantial and detrimental effects within the United States. *United States v. Baker*, 609 F.2d 134, 138 (5th Cir.1980) ("The objective territorial principle has been asserted successfully where there was proof that defendant's actions ... produced some effect within the United States ...."); *Rivard*, 375 F.2d at 887 ("'Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm....'") (*quoting Strassheim v. Daily*, 221 U.S. 280, 285, 31 S.Ct. 558, 55 L.Ed. 735 (1911)).

In this case, the Court agrees with the result reached in *United States v. Pizdrint*, 983 F.Supp. 1110 (M.D.Fla.1997), and finds that the alleged sexual assault committed by the defendant has an effect in the United States and exercising jurisdiction would not be unreasonable. As noted above, and by the court in *Pizdrint*, the M/V CELEBRATION engages in substantial business in the United States and regularly operates in United States territory. The vessel originates and terminates its voyage in the United States, and the majority of its passengers are American citizens. As a result of the alleged offense, the Federal Bureau of Investigation was required to conduct an investigation and arrest the defendant. The victim will have to undergo psychiatric counseling in the United States. The Court notes once again that no other country—Liberia, Panama, or Roberts' home country—has shown any interest in prosecuting the defendant. Further, although the objective territorial principle does not require that the defendant has a connection to the United States, the Government states that Roberts sometimes lives in Alabama when the cruise ship is docked in the United States.

For all of the foregoing reasons, the Court finds that this case clearly falls within the jurisdictional boundaries of §§ 7(1) and 7(8). Therefore,

IT IS ORDERED that defendant's motion to dismiss is DENIED.