**FIRST AMERICAN DEVELOPMENT GROUP/CARIB, LLC.,**
**Plaintiff/Counterclaim Defendant**

**v.**

**WESTLB AG, individually and as administrative agent for itself and other co-lenders, Defendant/Counterclaim Plaintiff**

**v.**

**STONE MASONRY, INC., WILLIAM R. ASH, V.I., INC., SPRINGLINE ARCHITECTS, LLC, BIOIMPACT, INC., DEBRA GRAMMER d/b/a ST. JOHN CABINETS AND INTERIORS, MLC HOLDINGS, LLC d/b/a IMPORT SUPPLY, ASCF INTERNATIONAL, LLC, ALRICK S. PARIS d/b/a PARIS DUMP TRUCK SERVICES, WHARTON-SMITH, INC., MO STEEL FABRICATORS & ERECTORS INC., MICHAEL J. LANAHAN LUMBER COMPANY, INC., GRAYDAZE CONTRACTING, INC., SK TILE & PLASTER, LLC, WMK MECHANICAL GROUP, LLC, CAJUN INSTALLATION AND DISTRIBUTING INC., MSI BUILDING SUPPLIES, INC., STEPHEN M. SCHULER d/b/a STEVE SCHULER & SON CONSTRUCTION, ECLECTIC ELECTRIC, INC., R.F. LUSA & SONS SHEETMETAL, INC., KENT SCOTT, KRAUS-MANNING, INC., and MAYER ELECTRIC SUPPLY, Additional Counterclaim and Crossclaim Defendants**

**v.**

**SB ARCHITECTS, INC., P.W.S. INTERNATIONAL INC., MCM MECHANICAL, RI-TECH CONSTRUCTION, LLC. ISLAND TILE AND MARBLE, LLC, MICHAEL RAISER ASSOCIATES, INC., AUBERGE RESORTS, LLC, PAUL FERRARAS, DONALD BLUMENTHAL, and D&N ELECTRIC COMPANY, Additional Crossclaim Defendants**

Civil No. ST-09-CV-535

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

August 24, 2011

317

318

Susan Bruch Moorehead, Esq.; Nagesh V. Tammara, Esq., Smock & Moorehead, St. Thomas, USVI, *Attorneys for Plaintiff.*

GREGORY H. HODGES, ESQ.; JUSTIN K. HOLCOMBE, ESQ., Dudley, Topper and Feuerzeig, LLP, St. Thomas, USVI, *Attorneys for Defendant WestLB AG*.

CARROLL, *Judge*

## MEMORANDUM OPINION

### (August 24, 2011)

First American and WestLB have been engaged in litigation for nearly two years over the development of a luxury residential community in St. John.[1] Having reviewed the record and the parties' submissions, the Court now grants WestLB's request to enter summary and default judgment in its favor.

## BACKGROUND

The Court will be brief in its discussion of the facts of this case, because much of the procedural and factual history of the case has been discussed in previous opinions.[2]

First American Development Group/Carib LLC[3] filed this lender liability suit because, it alleges, WestLB AG failed to live up to its contractual commitments. First American desired to develop a luxury residential community in Estate Chocolate Hole on St. John. To that end, it entered into an agreement in April 2007 with WestLB, a German bank, to borrow sixty-five million dollars.

In early 2008, construction began on the site. However, the project started to suffer financial distress, which First American attributes to the global economic recession of 2008-2009. To compound the problem, First American was unable to sell any of the residential units it was constructing. First American and WestLB entered into additional

---

[1] Over those two years, their suit surfaced in three courts, an administrative body and an appellate administrative agency; ensnared a number of local companies; and cost many hundreds of thousands of dollars.

[2] *See,* e.g., Memo. Op. March 30, 2010, 53 V.I. 107 and Memo. Op. June 03, 2011, 2011 WL 3044517.

[3] First American is represented in this action by Susan Moorehead, Esq., and Nagesh V. Tammara, Esq., of Smock & Moorehead. WestLB is represented by Gregory H. Hodges, Esq., of Dudley. Topper & Feuerzeig. LLP.

negotiations to determine whether WestLB would lend First American funds above and beyond what it had already agreed to. In the end, although WestLB made a "protective advance" to subcontractors to prevent them from leaving the job, it decided not to advance any further funds. The project ground to a halt, this suit ensued, and a Receiver was appointed to care for and manage the property during the pendency of this action.[4]

On July 27, 2010, WestLB filed a Motion for Default and Summary Judgment, seeking a Judgment against all parties on WestLB's claims against them. On September 3, 2010, it filed a Motion for Summary Judgment, requesting that the Court find in its favor on all of the parties' claims against it. The Court granted a Rule 56(f) request for a delayed ruling on the Motions. First American ultimately filed its Opposition on April 1, 2011, to which WestLB replied on April 26, 2011.

## DISCUSSION

### I. THE MOTION FOR SUMMARY JUDGMENT STANDARD.

Summary judgment is a "drastic remedy."[5] It is only appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[6]

First, the Court must determine whether there is any genuine issue of material fact.[7] It is initially the movant's burden to prove that there is none.[8] If the movant succeeds, the burden shifts and the nonmovant must

---

[4] The Supreme Court of the Virgin Islands dismissed on July 26, 2011, First American's interlocutory appeal of the Order Appointing Receiver because the court determined it lacked jurisdiction. S. Ct. Civ. No. 2010-0084, 2011 V.I. Supreme LEXIS 19 (V.I. July 26, 2011).

[5] *Williams v. United Corp.*, 50 V.I. 191, 194-95 (2008).

[6] FED. R. CIV. P. 56(c)(2); The Federal Rules of Civil Procedure and the Local Rules of Civil Procedure of the District Court of the Virgin Islands apply to matters before this Court whenever they are not inconsistent with the Rules of the Superior Court SUPER. Ct. R. 7.

[7] *See Skopbank v. Allen-Williams Corp.*, 7 F. Supp. 2d 601, 39 V.I. 220, 227 (D.V.I. 1998).

[8] *Rifenberg v. Varlack Ventures, Inc.*, Civil No. 2005-174, 2008 U.S. Dist. LEXIS 70700, at *1 (D.V.I. Sept. 18, 2008).

show — not just allege — that there is a genuine issue for trial. The mere existence of an alleged factual dispute as to an immaterial issue will not defeat an otherwise properly supported motion for summary judgment.[9] A fact is material only if its existence or non-existence will affect the outcome of a lawsuit under applicable law, and a dispute over a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[10] If there is no genuine issue of material fact, the Court must then determine whether the movant is entitled to judgment on the merits.[11]

The role of the Court is not to weigh the evidence for its truth or credibility, but merely to ascertain whether a triable issue of fact remains in dispute,[12] and, if not, who ought to succeed on the merits. The nonmoving party receives "the benefit of all reasonable doubts and inferences drawn from the underlying facts;"[13] the nonmovant's allegations will only be taken as true if they are supported by the record.[14] The nonmovant's "evidence must 'amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.' "[15] If the party that carries the burden of proof on a claim fails to present "pertinent evidence on an essential element . . . in resistance to a motion for summary judgment, it is presumed that no such evidence exists" and "the movant will be entitled to judgment as a matter of law."[16]

[9] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

[10] *Id.*

[11] *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990).

[12] *Suid v. Phoenix Fire & Marine Ins. Co., Ltd.*, 26 V.I. 223, 225 (D.V.I. 1991).

[13] *Aristide v. United Dominion Constructors, Inc.*, 30 V.I. 224, 226 (D.V.I. 1994) (citing *Matsushita Elec. Indus. Co. v Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

[14] *Williams*, 50 V.I. at 194-95.

[15] *Id.* (quoting *Saldana v. Kmart Corp.*, 260 F.3d 228, 43 V.I. 361, 364 (3d Cir. 2001)).

[16] 3 ROXANNE BARTON CONLIN & GREGORY S. CUSIMANO, LITIGATING TORT CASES § 31:22 (Aug. 2010).

## II. FIRST AMERICAN'S CLAIMS AGAINST WESTLB.

### A. First American's Claim for Breach of Contract.

First American claims that WestLB breached their contract because it "retained loan proceeds for its own use and delayed and/or did not pay Plaintiff its draws owed under the loan documents."[17]

██ To succeed on a claim for breach of contract, First American must show that there was an agreement between the parties; that the agreement imposed a duty on WestLB; that WestLB breached that duty; and that damages resulted from the breach.[18] WestLB does not contest that the parties had an agreement — in fact, it admits that there were several agreements between them. Instead, it argues that First American cannot prove that WestLB breached any of the duties imposed on it by the agreements. Specifically, WestLB states that it paid all of the draws required of it under the loan documents.

In its April 1, 2011 Opposition, First American fails to provide any evidence to controvert WestLB's position. There is no evidence referred to in the Opposition or in the Statement of Additional Material facts that indicates WestLB had a contractual duty to provide more than sixty-one million dollars.[19]

The Opposition makes a number of conclusory statements, and it is difficult to tease out what statements are meant to refer to which claims. First American states that WestLB knew, when it entered into the loan agreement, that the amount it lent would not be enough to complete the project. First American further states that WestLB obtained a right of first offer in case more funds were necessary. Finally, First American states that the Loan Agreement "contemplated" that First American would be able to sell some of its fractional ownership units and that the revenues from those sales would be used to pay for the construction. According to First American, the Loan Agreement also "contemplated" that "additional

---

[17] (First Amer. Compl. ¶ 21.)

[18] RESTATEMENT (SECOND) OF CONTRACTS § 235 (stating the elements for a breach of contract claim); V.I. CODE ANN. tit. 1, § 4 (1997) (requiring the Court to apply the principles of the Restatement as the law in this Territory, in the absence of local law to the contrary); *accord Arlington Funding Servs., Inc. v. Geigel*, 51 V.I. 118, 135 (2009).

[19] In fact, WestLB's evidence indicates that even the sixty-one million dollar loan was conditioned on the project meeting certain requirements.

financing to make up for such lost revenue would be potentially available."

First American refers the Court to its Statement of Additional Material Facts. To support its claim that WestLB knew the amount borrowed would not be enough to complete the project, it refers the Court to paragraph 3 of that Statement. Paragraph 3 states that "the original total amount requested by First American was between $78 to $83 million," but that WestLB lowered that amount for its own purposes. First American cites "JA 000001545-000001547," and testimony by Robert Emmett from January 2010.

The Court admonishes First American that it is required by LRCi 56.1 to "affix to the response [to a Motion for Summary Judgment] copies of, and cite to, the precise portions of the record relied upon as evidence for each material fact." First American did not attach to its response any portions of the record. In fact, it cites to a document, JA 000001545-000001547.[20] that is not in the Court's file. Therefore, the Court must rely only on the Emmett testimony[21] to controvert WestLB's statement that it fully disbursed all the money it was required to disburse.

The portion of Emmett's testimony cited by First American establishes that First American initially requested more than sixty-one million dollars, but that WestLB ultimately determined that it would only lend First American the sixty-one million dollars.[22] This testimony establishes that WestLB either knew or should have known that First American desired more financing than it ultimately received from WestLB. Furthermore, the express language of the right-of-first-offer provision[23] establishes that WestLB had the right to provide further financing for Phase II of the construction, if it was required. In addition. First American has established that the Pond Bay project's budget contemplated some sales from the residential units.

---

[20] The Court assumes that this was part of the record provided to the Supreme Court during First American's interlocutory appeal of the appointment of the Receiver.

[21] While the portion of the transcript of Emmett's testimony relied on by First American was also not attached to the Opposition, in contravention of LRCi 56.1, the Court at least has that transcript in its file.

[22] (Emmett Tr. Jan. 29, 2010, at 403-04 ("So, at that point we were told that the maximum amount of the loan would be in the neighborhood of $61 million.").)

[23] (Loan Agreement § 6.6.)

■ Drawing all reasonable inferences in favor of the nonmovant, the Court finds that First American has nonetheless failed to show a genuine issue of material fact. Even if both First American and WestLB knew that the amount of money WestLB promised to lend was insufficient to cover the entire costs of the project, such knowledge does not establish a promise by WestLB to First American to loan more money. In fact, the Right to First Offer provision clearly states that WestLB had the right, rather than the obligation, to loan further funds.

WestLB has shown that it disbursed all of the funds agreed to in the Loan Agreement. In response to the Motion for Summary Judgment, First American was required to either show there was an issue of fact or that WestLB was not entitled under the law to succeed on the breach of contract claim. Instead, it has failed to provide any evidence that WestLB owed it a duty to loan funds beyond the sixty-one million dollars agreed to. WestLB is entitled to a judgment in its favor on this claim.

### B. First American's Claim for Breach of Good Faith and Fair Dealing.

For its second claim. First American alleges that WestLB breached its implied promise to act with good faith and deal fairly in its negotiations. In its Opposition, First American points to a number of actions that it argues constitute WestLB's breach of this implied convenant.

■ Every contract in the Virgin Islands imposes upon the parties to it a duty to act in good faith and to deal fairly with the other in the enforcement and performance of the contract.[24] To state a claim for breach of this implied covenant, First American must show that there was a contract between the parties and that, in the performance or enforcement of that contract, WestLB "engaged in conduct that was fraudulent, deceitful, or otherwise inconsistent with the purpose of the agreement or the reasonable expectations of the parties."[25]

#### 1. WestLB's Alleged Failure to Negotiate in Good Faith.

■ ■ First American argues that WestLB breached the implied covenant by not negotiating in good faith before the parties' Loan and

---

[24] RESTATEMENT (SECOND) CONTRACTS § 205.

[25] *LPP Mortgage Ltd. v. Prosper*, 50 V.I. 956, 961 (D.V.I. 2008).

Security Agreement was executed when WestLB knew "full well" that the amount it agreed to lend would not cover the entire costs of the project. However, the duty of good faith and fair dealing governs the performance or enforcement of a contract and not the negotiations leading up to it.[26]

## 2. WestLB's Alleged Failure to Disclose its Financial Condition.

Next, First American faults WestLB for failing to disclose to it the financial distresses and difficulties it believes WestLB was suffering. First American apparently argues that had WestLB made its financial situation clear. First American would not have "relied upon the bank's representations that it intended to fairly negotiate a loan extension and/or modification, when in actuality it lacked any such intention and financial capability." However, the evidence to which First American points the Court[27] does not provide any proof that WestLB lacked the capacity to provide a loan extension or modification. If WestLB was financially capable of providing the modification, but chose not to, then WestLB's decision not to disclose its financial condition would be irrelevant.

Furthermore. First American admits that it entered into a Negotiation Agreement[28] with WestLB and that it expressly agreed that WestLB had "no obligation to discuss, negotiate or to agree to any restructuring . . . or to forbear or refrain from exercising or enforcing" its rights and remedies. Therefore, First American could not have had a "reasonable expectation"[29] that WestLB entered into the negotiations with an intention to provide the modification. First American urges the Court not to consider the Negotiation Agreement because, it says. WestLB's bad faith

---

[26] RESTATEMENT (SECOND) OF CONTRACTS § 205 ("[e]very contract imposes upon each party a duty of good faith and fair dealing in its *performance and enforcement*") (emphasis added); *see also Grand Union Supermarkets of Virgin Islands, Inc. v. H.E. Lockhart Mgmt.*, 46 V.I. 505, 514 (D.V.I. 2005).

[27] In its Opposition, First American cites: (1) Emmett's testimony at pages 79-83 of the transcript, which largely relates to the admission of evidence and discusses only WestLB's desire to have the CZM permit (Emmett Tr. Jan 30, 2010. 79-83); (2) Glass Ratner's Managing Director Wayne Weitz's testimony that Arcapita might be willing to provide additional capital (Weitz Tr, Jan. 29, 2010, 227); and (3) Managing Director of WestLB's Investment Management/Portfolio Exit Group Christian Ruehmer's testimony that WestLB has "good and bad bans" (Ruehmer Tr. Jan. 22, 2010, 81-82).

[28] The Negotiation Agreement, dated June 1, 2009 was offered as Exhibit J to WestLB's July 27, 2010 Motion for Summary Judgment.

[29] RESTATEMENT (SECOND) OF CONTRACTS § 205.

328

bars reliance upon it. However, not only does that present a circular argument but First American does not provide any evidence, aside from bare assertions, that WestLB acted in bad faith.

■ Finally, like all contract convenants, proof of a breach of the implied promise to act in good faith requires some proof of harm. First American does not provide any evidence that it took any action or forbore from any conduct based on WestLB's alleged failure[30] to disclose its financial condition.[31]

### 3. WestLB's Efforts to Survey and Appraise the Property and Prepare for Foreclosure.

■ First American also claims that WestLB's efforts to appraise the property, generate reports on the project to which First American was never privy, meet on the project site with the general contractor and prepare for foreclosure also constitute breaches of the implied convenant. However, First American does not indicate how such conduct constitutes bad faith, misrepresentation or fraud, or how it deprived First American of the reasonable benefits of the parties' agreement. In fact, First American does not provide any proof that it was harmed by the appraisal, the reports, meetings with the General Contractor or preparations for foreclosure. The Court cannot connect the dots for a party at the summary judgment stage.

### 4. WestLB's Alleged Statements Regarding Default.

First American also states that WestLB "declared to CZM and the public that first American was in default prior to" WestLB officially notifying First American.[32] However, none of the records referenced by First American demonstrate this alleged fact.[33] Ruehmer's testimony

---

[30] The Court refers to it as an "alleged" failure to disclose, because there is no evidence that First American inquired as to WestLB's financial condition.

[31] First American asserts in its Complaint that it "would have more actively pursued the obtaining of alternative financing" if it had known about WestLB's alleged financial difficulties. However, it provides no evidence to support this contention in opposition to the Motion for Summary Judgment.

[32] (FA Opp'n 5.)

[33] Because there is no evidence adduced to support this assertion, the Court need not decide whether, if the assertion is proved true, it constitutes a violation of the implied duty of good faith and fair dealing.

establishes only that WestLB sought a consent to the pledge, which it was entitled under the Loan Agreement to do.[34] Nor do the records demonstrate that WestLB was working in concert with anyone to "disparage the interest of First American within the greater community-at-large."[35]

■ First American has not provided the evidence necessary to support its conclusory statements. The Court, at this stage, does not weigh the evidence submitted by both parties in order to find facts. But the Court must be presented with *some* evidence that could plausibly support the claims asserted in order to move this matter forward to trial. First American has not presented any such evidence relating to the claim for breach of the implied duty of good faith and faith dealing. This claim must fail.

■ Exercising one's contractual rights alone cannot constitute bad faith conduct.[36]

## C. First American's Claim for Promissory Estoppel.

■ First American claims that WestLB's actions during the parties' negotiations caused First American to rely on WestLB's promises to its detriment. To succeed on a promissory estoppel claim, First American must prove that WestLB made a promise to First American that WestLB should have reasonably expected to induce forbearance on the part of First American; that First American refrained from taking action in reliance on that promise; and that injustice can only be avoided by enforcing the promise.[37]

■ As an initial matter, the Court addresses WestLB's contention that the gist-of-the-action doctrine bars this claim. The gist-of-the-action doctrine prevents "plaintiffs from bringing a tort claim that merely replicates a claim for breach of an underlying contract."[38] The District

---

[34] The Court notes that exercising one's contractual rights alone cannot constitute bad faith conduct. *Westmont Dev. Group v. Twp. of Haddon*, 373 Fed. Appx. 310 (3d Cir. 2010).

[35] (FA Opp'n 5.)

[36] *Westmont Dev. Group v. Twp. of Haddon*, 373 Fed. Appx. 310 (3d Cir. 2010).

[37] *Charleswell v. Chase Manhattan Bank, N.A.*, 308 F. Supp. 2d 545, 560, 45 V.I. 495 (D.V.I. 2004) (citing RESTATEMENT (SECOND) OF CONTRACTS § 90).

[38] *Addie v. Kjaer*, 51 V.I. 507, 513 (D.V.I. 2009).

330

Court of the Virgin Islands appears to have adopted this doctrine.[39] However, because the doctrine defines the rights of the parties by prohibiting certain claims, it falls within the realm of substantive law.[40] As substantive law, the Court may not apply the doctrine unless either the Virgin Islands Legislature has provided for the doctrine in the Code or it falls within the common law provision of Section 4 of Title 1 of the Virgin Islands Code.[41] There is no provision in the Code or the Restatement for the gist-of-the-action doctrine; furthermore, as Pennsylvania is apparently the only state to have adopted the doctrine, the Court cannot say that it is a rule of the common law "as generally understood and applied in the United States."[42]

Although WestLB has failed to convince the Court that the gist-of-the-action doctrine applies in the Virgin Islands, WestLB has nonetheless demonstrated that it is entitled to judgment in its favor on the promissory estoppel claim. First American has not come forward with any evidence to show that WestLB made a promise to it that it did not keep, let alone that First American reasonably relied on such a promise to its detriment.

### D. First American's Claim for Fraud.

First American claims that WestLB committed fraud by promising to negotiate in good faith while intending to deceive First American. It alleges that WestLB had no intention of reaching an agreement to modify the loan or contribute furthering financing. The Court agrees with WestLB that this is really a claim of fraudulent misrepresentation.

The Restatement states that, "[o]ne who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of

---

[39] *Id.*

[40] BLACK'S LAW DICTIONARY 1567 (9th ed. 2009) (defining substantive law as "[t]he part of the law that creates, defines, and regulates the rights, duties and powers of parties); *see also V. I. Coalition of Citizens With Disabilities, Inc. v. Gov't of the Virgin Islands*, 47 V.I. 315, 322 (V.I. Super. Ct. 2006) (recognizing that substantive law dictates the parties' rights and responsibilities, while procedural rules govern the process by which those rights and responsibilities are enforced); *Tri County Realty, Inc. v. Lunaire Ltd.*, Civil Action No, 4:06-CV-1926, 2006 WL 3484355, at *2 (M.D. Pa. Nov. 30. 2006).

[41] *Gov't v. Durant*, 49 V.I. 366 (2008) (observing that the Revised Organic Act permits the local courts to "create only procedural rules, not substantive ones").

[42] 1 V.I.C. §4.

inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation."[43]

 Therefore, to succeed on its fraudulent misrepresentation claim, First American must be able to prove at trial that WestLB made a misrepresentation as to a fact, opinion, intention or law; that WestLB intended First American to act upon or refrain from acting based on that misrepresentation; that First American justifiably relied on the misrepresentation; and that First American was harmed as a result of the reliance.[44]

WestLB argues that it has not made any misrepresentations and that, even if it had, First American could not have justifiably relied on them. First American appears to argue that WestLB's misrepresentations consist of it intimating that it would loan further sums of money for the project when, in reality, it had neither the intention nor the ability to do so.

 First American must do more, though, in opposition to a Motion to Summary Judgment, then make conclusory statements. It must demonstrate that there is a factual dispute, referencing specific parts of the record. First American has failed to do this. It does not show the Court that WestLB promised to loan more money. To the contrary, the Pre-Negotiation Agreement, which First American — as a sophisticated enterprise — agreed to, clearly states that neither party was obliged to negotiate, and it contains a clause encouraging First American to seek other sources of funds. First American states that " 'WestLB's own acts, misrepresentations, bad faith and unclean hands bar its reliance on said Agreement.' " However, this is a bare assertion with no evidence in the record.

 Because First American has failed to demonstrate a genuine issue as to whether WestLB ever misrepresented a fact, opinion or an intention, and because the evidence supports a finding in WestLB's favor as a matter of law, the Court will grant WestLB's Motion for Summary Judgment as to the fraud claim.[45]

---

[43] RESTATEMENT (SECOND) OF TORTS § 525.

[44] *Id.*

[45] *Williams,* 50 V.I. at 194-95 (stating that the Court may only take a nonmovant's allegations as true if they are supported by the record).

### E. First American's Claim for Interference with Contractual Relations and Prospective Contractual Relations.

First American claims that WestLB interfered with its contractual relations by meeting secretly with subcontractors, divulging confidential information to them and directing them in ways contrary to First American's interests. WestLB argues that, even if First American's factual allegations are correct, they do not amount to a tort because WestLB's actions were privileged. More specifically, it argues that it acted in good faith to assert its legally protected interest.[46]

#### 1. Inference with Existing Contractual Relations.

 To succeed on its claim for interference with existing contractual relations, First American must be able to prove that there was a contract between First American and a third party; that WestLB knew of the contract; that the third party failed to perform and that WestLB's actions were the proximate cause of the failure to perform; and that WestLB acted intentionally and improperly.[47] Finally, First American must be able to show it was damaged by the interference.

 First American has failed to provide any evidence that anyone with whom it had contracted failed to perform or that WestLB's actions were the proximate cause of that failure. First American has also provided no evidence that WestLB acted improperly. Finally, First American has failed to show that any information provided by WestLB was untruthful.[48]

#### 2. Interference With Prospective Contractual Relations.

 To succeed on its claim for tortious interference with prospective contractual relations, First American must prove that WestLB "induc[ed] or otherwise caus[ed] a third person not to enter into or continue [a] prospective relation" or "prevent[ed First American] from acquiring or

---

[46] RESTATEMENT (SECOND) OF TORTS § 773.

[47] *Gov't Guarantee Fund of Rep. of Finland v. Hyatt Corp*, 955 F. Supp. 441, 452, 35 V.I. 356 (D.V.I. 1997) (citing RESTATEMENT (SECOND) OF TORTS § 766).

[48] RESTATEMENT (SECOND) OF TORTS § 772 ("One who intentionally causes a third person not to perform a contract or not to enter into a prospective contractual relation with another does not interfere improperly with the other's contractual relation, by giving the third person (a) truthful information or (b) honest advice within the scope of a request for the advice.").

continuing the prospective relation" and that WestLB's actions were intentional, improper and harmful,[49]

First American has not provided any evidence that any third party failed to enter into a contractual relation with it, let alone that such a failure resulted from WestLB's actions. Even if there was evidence of those elements, First American has also not submitted any proof whatsoever that WestLB acted improperly. Therefore, First American has not succeeded in its burden of providing evidence that there is a genuine issue of material fact. This claim, too, must fail.

### F. First American's Claim for Business Disparagement.

First American claims that WestLB's actions with respect to subcontractors and government agencies in the Virgin Islands amounts to business disparagement. WestLB argues that this claim should be treated as a kind of injurious falsehood, such that First American must prove that WestLB made a disparaging statement of fact that was untrue or that it made a statement of opinion that is incorrect; that the disparaging statement was not privileged; and that First American suffered direct pecuniary harm as a result of the statement.[50] First American, for its part, does not state what standard it thinks ought to apply to this claim.

Regardless of whether First American's claim is for defamation[51] or for injurious falsehood,[52] First American must, at least, offer some evidence that it could prove that WestLB made an untrue statement. Instead, the only part of the record it references in support of this claim is Rheumer's testimony that WestLB sought a consent to pledge the CZM permit. As noted above, WestLB was entitled under the parties' contract to do this. It does not show that WestLB made any untrue statement in connection with that effort. This claim, too, must fail.

### G. First American's "Claim" of Force Majeure.

"Force majeure" is not a claim for relief. It is a defense.

---

[49] RESTATEMENT (SECOND) OF TORTS § 766B.

[50] *United States Healthcare v. Blue Cross of Greater Phila.*, 898 F.2d 914, 924 (3d Cir. 1990).

[51] RESTATEMENT (SECOND) OF TORTS § 558.

[52] RESTATEMENT (SECOND) OF TORTS § 623A.

### H. First American's "Claim" for Impossibility of Performance.

Like First American's "claim" for force majeure, its claim for impossibility of performance is not actually a claim but rather a defense.

### I. First American's Claims for Injunctive Relief and Punitive Damages.

 Injunctive relief and punitive damages are types of relief requested for an alleged harm; they are not claims themselves. Because the Court finds that First American has not shown there is a genuine issue of fact as to any of the claims, and that WestLB is entitled to judgment on all of First American's claims, the Court need not address the hypothetical question of what relief First American would be entitled to if it could prove its claims.

Having considered each of First American's claims, the Court finds that First American has failed to show a genuine issue of material fact. While the Court must take well-supported allegations in favor of First American,[53] it cannot merely speculate on what may have been; the dearth of evidence in support of First American's opposition suggests such evidence does not exist.[54] After having received about six months' reprieve to complete discovery, gather its evidence, and present its case, First American has fallen well short of its burden.[55] The Court will grant summary judgment to WestLB on all of First American's claims.

## III. SUBCONTRACTOR CLAIMANTS' CLAIMS AGAINST WESTLB.

In its September 3, 2010 Motion for Summary Judgment, WestLB asks the Court to grant it summary judgment on all claims asserted by the project's subcontractors. Specifically, it requests summary judgment as to the claims of Defendants Cajun Installation and Distributing, Inc.; SK Tile & Plaster, LLC; Alrick S. Paris d/b/a Paris Dump Truck Services; and Stone Masonry, Inc.

Defendant Michael J. Lanahan Lumber Company, Inc., also had claims against WestLB but Lanahan was dismissed as a party by Order dated

---

[53] *Williams*, 50 V.I. at 194-95.

[54] Indeed, First American did not provide even a single affidavit to support its accusations.

[55] While WestLB carries the initial burden, First American must, in response to the Motion, show a genuine issue of material fact or otherwise show why WestLB is not entitled to judgment as a matter of law.

August 5, 2011. In addition, on November 22, 2010, the Court granted WestLB's Motion to Dismiss the counterclaims of Defendant ASCF International, LLC.

On March 25, 2011, the mediator filed a Final Mediation Report. The Report states that Paris, SK Tile and Cajun agreed to withdraw their counterclaims against WestLB. Accordingly, on March 22, 2011, the Court approved a stipulation between WestLB and Cajun to dismiss Cajun's counterclaims. Similarly, the Court dismissed Stone Masonry's counterclaims against WestLB on February 17, 2011. Although Paris and SK Tile have not yet filed a similar stipulation, based on the mediator's representation the Court will hold in abeyance its decision on WestLB's request for summary judgment on their claims against the bank. The parties will be instructed to inform the Court within fourteen (14) days whether the Defendants wish to pursue those claims.

## IV. WESTLB'S CLAIMS AGAINST FIRST AMERICAN.

█ In its July 27, 2010 Motion for Summary and Default Judgment, WestLB asks the Court to grant it summary judgment on its claim against First American for foreclosure. To succeed on a claim for foreclosure, WestLB must prove that First American executed a note and mortgage; that First American failed to repay the sums due under that agreement; and that WestLB is entitled, under the terms of the note and mortgage, to foreclose on the property.[56]

First American does not contest that the parties executed a Note and Mortgage in this Case. Furthermore, they do not contend that they complied with their duty to repay the loan. Instead, First American argues that WestLB is not entitled to foreclose the property because it acting in bad faith, caused First American's default.

First American is correct that the Court's adjudication that it was in default under the Note and Mortgage during the receivership proceedings was a preliminary determination, one unaided by the exchange of discovery or the full exploration of the evidence. After the Receiver was appointed, First American and the other parties began discovery, and the Court delayed consideration of the Motion for Summary and Default

---

[56] *See Celestin v. LLP Mortg. Ltd.*, S.Ct. No. 2007-014, 2007 V.I. Supreme LEXIS 6, at *5 (V.I. Nov. 9, 2007).

Judgment so that First American could obtain the evidence it would need to defend its position. Discovery is now closed. However, First American has still not presented any evidence to demonstrate that it is not in default or that the default was the result of WestLB's conduct.

The Court already addressed First American's claims against WestLB and found them to be without substantive support. To the extent that those claims serve as a defense to the foreclosure action, the Court therefore finds them unavailing. However, the Court will consider First American's defenses of force majeure and impossibility of performance.

## A. Force Majeure

First American claims that it was unable to perform under the Loan Agreement because of a global economic recession. However, as the Court determined in its March 30, 2010 Memorandum Opinion, an economic recession is not the kind of force majeure event that serves as a defense under First American's Agreement with WestLB.

## B. Impossibility of Performance

First American claims that WestLB's "misleading" of First American about WestLB's financial condition, along with the global economic downturn, made it impossible for First American to comply with the Loan Agreement.

 The Restatement addresses impracticability of performance in Section 261.[57] It notes that parties may, at times, be excused for their failure to perform according to their contractual duties. However, the parties' failure to perform must be accompanied by circumstances that contravene a basic assumption of the parties when they formed the contract.[58] As WestLB observes in its Motion, the Restatement further qualifies the general principle by explaining that "[t]he continuation of existing market conditions and of the financial situation of the parties are ordinarily not such assumptions, so that mere market shifts or financial inability do not usually effect discharge."[59]

 First American could not possibly mean that parties to any contract meant to be performed even in part, in the last few years could

---

[57] RESTATEMENT (SECOND) OF CONTRACTS § 261.

[58] *Id.*

[59] *Id.* cmt. b.

simply refer to the poor economy as an excuse for a breach. If that were the case, no one could enter into contracts because of the uncertainty surrounding the future of the markets. This is precisely why other courts have refused to excuse non-performance on the general basis of a global economic slowdown or other economic misfortunes.[60]

 Even if a global recession could excuse non-performance, First American has not shown any evidence that it was impossible for it to perform under the Agreement. It has not offered any evidence that it attempted to obtain further financing or that it was rebuffed by other lenders. First American did not offer any evidence regarding its financial condition to show that it lacked, the funds necessary to pay the loan. Because economic downturns cannot serve as an excuse for non-performance and because First American has failed to show that it was impossible for it to perform, this defense also fails. The Court will grant summary judgment in favor of WestLB on its claim for foreclosure.

## V. WESTLBS CLAIMS AGAINST SUBCONTRACTORS.

WestLB seeks default judgment as to some of the subcontractors and summary judgment as to others. In both cases, the Court must determine whether WestLB is entitled to the relief it seeks, which is foreclosure of the subcontractors' liens,

 As an initial matter, the Court notes that none of the subcontractors oppose the Motion.[61] There is no argument that WestLB holds a first priority mortgage and it is beyond dispute that the subcontractors' hold junior liens that, according to the law of the Virgin

---

[60] *See, e.g., W.R. Grace & Co. v. Local Union 759,* 461 U.S. 757, 769 n.12, 103 S. Ct. 2177, 76 L. Ed. 2d 298 (1983) ("Economic necessity is not recognized as a commercial impracticability defense to a breach of contract claim."); *Martin v. Vector Co., Inc.,* 498 F.2d 16, 22-23 (1st Cir. 1974) (refusing to read into the contract an implied condition of profitability, noting that parties assume the risk of economic loss when they enter into a contract); *Hoosier Energy Rural Elec Co-op, Inc. v. John Hancock Life Ins. Co.,* 582 F.3d 721, 728 (7th Cir. 2009) ("the impossibility' doctrine never justifies failure to make a payment, because financial distress differs from impossibility").

[61] Stone Masonry had initially filed an opposition, but that was withdrawn by stipulation on February 18, 2011.

Islands, will be foreclosed when WestLB forecloses on its mortgage.[62] Therefore, the Court will enter judgment in favor of WestLB and against all subcontractors on WestLB's claim for foreclosure.[63]

However, the Court notes that it cannot grant default judgment as to Defendant R.F. Lusa & Sons Sheetmetal, Inc., as WestLB requests, because R.F. Lusa has answered the Complaint and the Court denied an entry of its default on September 29, 2010. The Court will, though, enter default judgment as to the parties already defaulted; that is. Defendant Kent Scott, Stephen M. Schuler d/b/a Steve Schuler & Son Construction. WMK Mechanical Group, LLC, and Kraus-Manning, Inc.[64]

## VI. CLAIMS REMAINING FOR TRIAL.[65]

By Order dated April 11, 2011, the Court set this matter down for jury selection on October 11, 2011. Those of the remaining claims that are not stayed are scheduled to be tried during that three-week period.

### A. First American's Claims Against Wharton-Smith.

In its June 3, 2011 Opinion and Order, the Court stayed all of First American's claims against Wharton-Smith pending the outcome of arbitration. The parties will be directed to inform the Court of the completion of arbitration.

---

[62] V.I. CODE ANN. tit. 28, § 258 (1996). ASCF raised a claim of equitable subordination in its June 3, 2010 Answer and Counterclaim but, as noted above, its claims against WestLB were dismissed on November 22, 2010.

[63] The Court notes that it cannot grant default judgment as to Defendant R.F. Lusa & Sons Sheetmetal, Inc., as WestLB requests, because R.F. Lusa has answered the Complaint and the Court denied an entry of its default on September 29, 2010. It can, though, grant the request for summary judgment against R.F. Lusa, as WestLB requested in its Motion that the Court grant summary judgment as to all junior lienholders on WestLB's claims against them.

[64] The Court entered the default of Scott, Schuler, WMK and KMI on September 29, 2010. The Court determined then, and affirms now, that WestLB provided sufficient evidence that Schuler and Scott are not infants, incompetent, nor are they in the military service.

[65] The record for this case now consists of thirteen files, filling three boxes. The Court has endeavored to be thorough. However, if the Court errs here in stating the number or kind of claims or otherwise overlooks a significant fact regarding the remaining claims or parties, it would, of course, happily accept clarification from any party.

### B. Wharton-Smith's Claims Against First American.

The Court stayed Wharton-Smith's claims against First American by Order dated June 3, 2011, while the parties arbitrate. Accordingly, those claims will stay alive until at least: the conclusion of arbitration.

### C. Subcontractors' Claims Remaining Against WestLB.

As noted in Section III above, Paris and SK Tile apparently agreed to settle their claims with WestLB and move to dismiss those claims. They have not yet done so. The Court will reserve decision on WestLB's Motion for Summary Judgment as to those claims, but, meanwhile, those claims remain alive.

On March 9, 2010, Defendant PWS International, Inc., filed an Answer to Mo Steel Fabricators & Erectors Inc.'s Crossclaim and Counterclaim and PWS's Counterclaim and Crossclaim. In that pleading, PWS alleged claims against WestLB for unjust enrichment and negligence. WestLB's September 3, 2010 Motion for Summary Judgment, though, does not ask for summary judgment against PWS as to those claims, so they remain.

On March 12, 2010, Defendant Island Tile & Marble, LLC, filed an "Answer to Crosse aim and Counterclaim of Mo Steel Fabricators & Erectors, Inc., and Crossclaim against First American Development Group/Carib, LLC." Despite the name of the document, Island Tile asserts in the pleading claims against WestLB. WestLB's September 3, 2010 Motion for Summary Judgment, though, does not ask for summary judgment against Island Tile as to those claims, so they remain.

### D. Subcontractors' Claims Against First American.

A number of subcontractors have filed claims against First American. On January 7, 2010. BioImpact and Springline both alleged claims against First American, but the Court granted Summary Judgment for both subcontractors on those claims.[66] Lanahan had alleged claims against First American in its July 19, 2010 pleading but, on August 5, 2011, the Court granted Lanahan's Motion to Dismiss those claims and its claims against WestLB.

■ On January 22, 2010, Atlanta Refrigeration Service, V.I., filed claims against First American. On September 21, 2010, Atlanta

---

[66] The Judgment was entered in accord with a Stipulation filed on May 9, 2011, which was signed by counsel for First American and counsel for BioImpact and Springline.

Refrigeration submitted a "Stipulation for Voluntary Dismissal of Additional Counterclaim Defendant, Atlanta Refrigeration Service, V.I.," pursuant to Rule 41(a)(1)(A)(ii). Rule 41(a)(1)(A)(ii) permits the dismissal of claims without court approval but only if the stipulation is signed by "all parties who have appeared." R.F. Lusa appeared on July 22, 2010. Island Tile answered on March 12, 2010. However, the Stipulation does not contain the signatures of their counsel, so the Stipulation was never effective. Atlanta Refrigeration remains in the case and its claims remain pending against First American.

On January 7, 2010, Mo Steel Graydaze and Nash filed claims against First American. Those claims are still alive. Similarly, the claims of SK Tile,[67] Eclectic Electric, Inc.,[68] Cajun,[69] Paris,[70] PWS,[71] Island Tile,[72] Michael Raiser Associates,[73] ASCF,[74] and Debra Grammer d/b/a St. John Cabinets and Interiors are still pending, too.[75]

## CONCLUSION

Because WestLB has established that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law the Court will grant summary judgment in its favor on all of its claims against other parties. The Court will also grant summary judgment in its favor on all of First American's claims and, with limited exceptions, on the claims asserted by the project subcontractors against WestLB. An appropriate order and a judgment of foreclosure will issue separately today.

---

[67] These claims were alleged in a January 20, 2010 filing.

[68] These claims were alleged in a January 20, 2010 filing.

[69] These claims were alleged in a January 20, 2010 filing.

[70] These claims were alleged in a February 10, 2010 filing.

[71] These claims were alleged in a March 10, 2010 filing.

[72] These claims were alleged in a March 12, 2010 filing.

[73] These claims were alleged in a March 17, 2010 filing.

[74] These claims were alleged in a June 3, 2010 filing. As noted above, ASCF's claims against WestLB were dismissed on November 22, 2010, but its claims against all other parties remain.

[75] These claims were alleged in a July 23, 2010 filing.